[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 398.]

THE STATE OF OHIO, APPELLANT, *v*. MARTELLO, APPELLEE.

[Cite as *State v. Martello*, 2002-Ohio-6661.]

*Criminal law—Parole—Postrelease control—R.C. 2967.28(F)(4) does not violate the Double Jeopardy Clauses of the United States and the Ohio Constitutions.*

(No. 2001-1048—Submitted April 9, 2002—Reargued November 13, 2002—

Decided December 13, 2002.)

APPEAL from the Court of Appeals for Ashtabula County, No. 2000-A-0026.

_____

SYLLABUS OF THE COURT

R.C. 2967.28(F)(4), which specifies that a person released on postrelease control who violates conditions of that postrelease control faces a term of incarceration for the violation as well as criminal prosecution for the conduct that was the subject of the violation as a felony in its own right, does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions.

_____

ALICE ROBIE RESNICK, J.

{¶1} We are required to determine whether the Double Jeopardy Clauses of the United States and Ohio Constitutions preclude a criminal defendant who is sanctioned for violating Ohio's postrelease control statute, R.C. 2967.28, from being criminally prosecuted for the same conduct that was the reason for the sanction. For the reasons that follow, we find that the criminal prosecution does not offend principles of double jeopardy. We reverse the judgment of the court of appeals.

I

Facts and Procedural History

{¶2} In August 1997, defendant-appellee, Joseph Martello, was sentenced on charges of burglary and theft to concurrent six-month prison terms. On February 17, 1998, after serving the six months, appellee was released from custody and placed on postrelease control, including the requirement that he report periodically to a parole officer. Beginning in February 1999, appellee failed to report to his parole officer.

{¶3} On March 31, 1999, the Ohio Adult Parole Authority ("APA") declared appellee to be a "violator at large." See R.C. 2967.15(C)(1). On September 9, 1999, appellee was indicted on one count of escape pursuant to R.C. 2921.34(A)(1), a felony of the third degree, and a warrant was issued for his arrest. On or about October 27, 1999, appellee was taken into custody. On October 29, 1999, appellee was arraigned in the Ashtabula County Court of Common Pleas on the escape charge and pled not guilty.

{¶4} On November 22, 1999, the Ohio Parole Board ruled that appellee's failure to report to his parole officer on several occasions was a violation of his postrelease control and ordered that appellee be incarcerated for 91 days for this violation. R.C. 2967.28(F)(3). After he served the 91-day term, appellee moved to dismiss the escape charge. Appellee argued that principles of double jeopardy prohibited his prosecution for escape.

{¶5} The trial court held a hearing on the motion to dismiss and on April 5, 2000, granted the motion, ruling that the Double Jeopardy Clauses of the United States and Ohio Constitutions barred appellee's prosecution for escape because that charge was for the same actions that had already resulted in the 91-day term of incarceration. The court of appeals affirmed the judgment of the trial court.

{¶6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

II

Double Jeopardy

**{¶7}** The Double Jeopardy Clause of the United States Constitution, contained in the Fifth Amendment, provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." Section 10, Article I of the Ohio Constitution similarly provides, "No person shall be twice put in jeopardy for the same offense." The protections afforded by the two Double Jeopardy Clauses are coextensive. *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435.

**{¶8}** It has long been recognized that double jeopardy principles do not prohibit the imposition of every additional sanction that could be labeled "punishment" in common parlance. *Hudson v. United States* (1997), 522 U.S. 93, 98-99, 118 S.Ct. 488, 139 L.Ed.2d 450; *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443. Rather, double jeopardy principles protect "only against the imposition of multiple criminal punishments for the same offense * * * and then only when such occurs in successive proceedings." (Emphasis deleted.) *Hudson*, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450; *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917; *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535.

**{¶9}** For our purposes here, the question that must be answered is whether appellee's 91-day term served for his postrelease control violation placed him in jeopardy so that his criminal prosecution for escape under R.C. 2921.34(A)(1),[1]

---

1.    {¶a} R.C. 2921.34(A)(1) provides:
    {¶b} "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
    {¶c} R.C. 2921.01(E) includes within the definition of "detention," "supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution." See, generally, *State v. Conyers* (1999), 87 Ohio St.3d 246, 248, 719 N.E.2d 535. This case raises no issue concerning the specific propriety of the escape charge.

which clearly could lead to a "criminal punishment" in double jeopardy terminology for that offense, is forbidden. In order to resolve the issue presented, we must consider the nature of the 91-day prison term administratively imposed on appellee, and determine whether that term imposed for violation of postrelease control should be categorized as "criminal punishment" for double jeopardy purposes, so that appellee was placed in jeopardy by that action. To conduct this analysis, it is first necessary to consider what postrelease control is and then to examine the process by which violators of postrelease control are disciplined.

III

Postrelease Control

{¶10} This court recently summarized and reviewed the history behind the comprehensive revision of Ohio's Criminal Code by the General Assembly's passage of Am.Sub.S.B. No. 2 ("SB 2") and related legislation, which took effect on July 1, 1996 (146 Ohio Laws, Part IV, 7136). *Woods v. Telb* (2000), 89 Ohio St.3d 504, 507-509, 733 N.E.2d 1103. One of SB 2's primary goals was "truth in sentencing," meaning that the sentence that is imposed by the trial judge is the sentence that actually is served, unless the judge alters it. Id. at 508, 733 N.E.2d 1103.

{¶11} To foster truth in sentencing, SB 2 eliminated indefinite sentences and parole, two key components of the former sentencing system. Id. In place of parole, SB 2 introduced the concept of postrelease control, which is mandatory for some offenders and is imposed at the discretion of the Parole Board for others. Id.; R.C. 2967.28. " 'Post-release control' means a period of supervision by the adult parole authority after a prisoner's release from imprisonment that includes one or more post-release control sanctions imposed under section 2967.28 of the Revised Code." R.C. 2967.01(N).

{¶12} The consequences of violating postrelease control sanctions are detailed in R.C. 2967.28(F). R.C. 2967.28(F)(3) authorizes the Parole Board to

impose a prison term if the board determines after a hearing that a person released on postrelease control (a "releasee," see R.C. 2967.01[J]) has violated the sanctions or conditions of the postrelease control.

{¶13} R.C. 2967.28(F)(4) specifically provides that a releasee who has violated any postrelease control sanction or conditions by committing a felony "may be prosecuted for the new felony, and, upon conviction, the court shall impose sentence for the new felony. In addition to the sentence imposed for the new felony, the court may impose a prison term for the violation, and the term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board or adult parole authority as a post-release control sanction. * * * A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony." Thus, R.C. 2967.28 specifically provides that appellee faced both an administrative prison term for the violation of his postrelease control sanctions and an additional prison term for the conduct that was the substance of that violation, prosecuted as a felony offense in its own right. The issue is whether these provisions of R.C. 2967.28(F)(4) violate appellee's double jeopardy rights.

IV

*Woods*

{¶14} In *Woods*, this court found that the postrelease control statute withstood constitutional scrutiny on the two grounds that were under consideration in that case, holding, "R.C. 2967.28 does not violate the separation of powers doctrine or the Due Process Clauses of the United States or Ohio Constitutions." Id., 89 Ohio St.3d 504, 733 N.E.2d 1103, paragraph one of the syllabus. However, *Woods* did not involve a challenge to the statute on double jeopardy grounds. Although many district courts of appeals have considered the double jeopardy issue raised in the case sub judice, this court has not previously ruled on the issue.

{¶15} In its consideration of whether the postrelease control statute violated the separation-of-powers doctrine, this court in *Woods* made an observation that is relevant to the issue in this case—i.e., whether R.C. 2967.28 violates principles of double jeopardy. Specifically, in reviewing the court of appeals' conclusion that postrelease control is different from the prior system of parole because postrelease control begins only after an offender completes the sentence imposed by the trial court, this court stated, "We find this conclusion to be incorrect because * * * post-release control is part of the original judicially imposed sentence." Id. at 512, 733 N.E.2d 1103.

{¶16} In a further observation that is relevant to our issue, the *Woods* court went on to state that "post-release control sanctions are sanctions aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime." Id. Although these statements are not dispositive of the double jeopardy issue, they provide a strong indicator of the appropriate view of the statute. In fact, as the court of appeals acknowledged, many appellate courts have been relying on these observations from *Woods* to find no violation of double jeopardy principles in these types of cases.

V

No Double Jeopardy Clause Violation

{¶17} We find that this court's statements in *Woods*, although made in a different context, are fully applicable in our double jeopardy analysis. The courts of appeals that have relied on the statements from *Woods* have been fully justified in doing so, and we agree with their reasoning. The statements from *Woods*, although not made in a double jeopardy context, mesh with the principles of double jeopardy that emerge from the United States Supreme Court's decision in *Hudson*, and supply the answers for the questions that must be asked in a *Hudson*-based analysis.

{¶18} In *Hudson*, 522 U.S. at 96, 118 S.Ct. 488, 139 L.Ed.2d 450, the United States Supreme Court reaffirmed the two-part test for determining whether a particular penalty is a "criminal punishment" for double jeopardy purposes that was set forth in *United States v. Ward* (1980), 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742. Under this test, the first question to be answered is "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Hudson*, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450, quoting *Ward*, 448 U.S. at 248, 100 S.Ct. 2636, 65 L.Ed.2d 742. Second, even in those cases where the legislature has indicated an intention to establish a civil penalty, the United States Supreme Court has inquired further whether the statutory scheme was so punitive in purpose or effect as to transform what was clearly intended to be a civil remedy into a criminal penalty. *Hudson,* 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450; *State v. Uskert* (1999), 85 Ohio St.3d 593, 597, 709 N.E.2d 1200.

{¶19} In R.C. 2967.28(F)(4), the General Assembly has specified that a person released on postrelease control who violates conditions of that postrelease control faces a term of incarceration for the violation as well as criminal prosecution for the conduct that was the subject of the violation as a felony in its own right. With this provision, the General Assembly has indicated its clear intent that the prison term imposed for the violation of postrelease control is a reinstatement of part of the original sentence for violating the conditions of supervision, and is not meant to be a separate criminal punishment. Therefore, for purposes of a *Hudson* analysis, in the circumstances before us the term of incarceration for a postrelease control violation must be classified as civil in nature, since it is definitely not meant to be a "criminal punishment."

{¶20} Because the answer under the first part of the *Hudson* test is that the penalty in question is civil, we must proceed to the second prong of the test, which requires us to ask whether R.C. 2967.28 is so punitive in purpose or effect that it

amounts to a criminal penalty. " '[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100, 118 S.Ct. 488, 139 L.Ed.2d 450, quoting *Ward*, 448 U.S. at 249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

{¶21} In analyzing this second part of the test, the *Hudson* court stated that it is helpful to refer to the seven guidelines set forth in *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644, which include questions such as "[w]hether the sanction involves an affirmative disability or restraint" and "whether it has historically been regarded as a punishment." *Hudson*, 522 U.S. at 99-100, 118 S.Ct. 488, 139 L.Ed.2d 450. In this case however, there is no need to resort to the *Mendoza-Martinez* factors.

{¶22} Federal appellate courts have consistently held that punishment for a supervised-release violation in the form of imposition of a sentence for that violation and a separate criminal prosecution for the same conduct that constituted a violation of the release does not violate principles of double jeopardy. See, e.g., *United States v. Soto-Olivas* (C.A.9, 1995), 44 F.3d 788, in which the court found that the federal supervised-release statute, Section 3583(a), Title 18, U.S.Code, by its plain language provides that "the entire sentence, including the period of supervised release, is the punishment for the original crime, and 'it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms' of his release." Id. at 790, quoting *United States v. Paskow* (C.A.9, 1993), 11 F.3d 873, 881.

{¶23} The *Soto-Olivas* court went on to state that "punishment imposed upon revocation of supervised release is punishment for the original crime, not punishment for the conduct leading to revocation" for purposes of the Double Jeopardy Clause and held that the defendant's double jeopardy rights were not violated by his prosecution for his second offense, even though this offense "resulted in revocation of his term of supervised release which was imposed as

punishment for his earlier offense." Id., 44 F.3d at 791, 792. See, also, *United States v. Woodrup* (C.A.4, 1996), 86 F.3d 359, 362-363 (punishment imposed for violating terms of supervised release is considered punishment for defendant's previous offense, not for his subsequent offense; "the Double Jeopardy Clause does not prohibit the government from criminally prosecuting and punishing an offense which has formed the basis for revocation of a term of supervised release"); *United States v. Wyatt* (C.A.7, 1996), 102 F.3d 241, 245 ("supervised release is a part of the defendant's original sentence * * *. Because revocation of supervised release amounts only to a modification of the terms of the defendant's original sentence, and does not constitute punishment for the revocation-triggering offense, the Double Jeopardy Clause is not violated by a subsequent prosecution for that offense").

{¶24} In *Johnson v. United States* (2000), 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727, a case involving the Ex Post Facto Clause, Section 9, Article I, United States Constitution, the United States Supreme Court concluded that sanctions for supervised-release violations are part of the punishment for the offense that led to the original conviction. The court remarked that serious constitutional questions would be raised if revocation of supervised release and reimprisonment were instead viewed as punishment for the violation of supervised-release conditions. Id., 529 U.S. at 700, 120 S.Ct. 1795, 146 L.Ed.2d 727. As an illustration of this point, the court observed, "Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties. See, e.g., *United States v. Wyatt*, 102 F.3d 241, 244-245 (C.A.7 1996) (rejecting double jeopardy challenge on ground that sanctions for violating the conditions of supervised release are part of the original sentence)." Id.

**{¶25}** A close reading of those cases, particularly *Johnson*, makes clear that the concept of supervised release in the federal system is sufficiently similar to the concept of postrelease control in this state that the federal appellate cases on supervised release can be relied on in our consideration of R.C. 2967.28. Therefore, those cases are directly relevant in their discussion of the Double Jeopardy Clause to the situation in this case and bolster the accuracy of this court's observations in *Woods*.

**{¶26}** As this court's statement in *Woods*, 89 Ohio St.3d at 512, 733 N.E.2d 1103, makes clear, "post-release control is part of the original judicially imposed sentence." Therefore, jeopardy does not attach when a defendant receives a term of incarceration for the violation of conditions of postrelease control. Such a term of incarceration is attributable to the original sentence and is not a "criminal punishment" for Double Jeopardy Clause purposes that precludes criminal prosecution for the actions that constituted a violation of the postrelease control conditions.

**{¶27}** Therefore, we hold that R.C. 2967.28(F)(4), which specifies that a person released on postrelease control who violates conditions of that postrelease control faces a term of incarceration for the violation as well as criminal prosecution for the conduct that was the subject of the violation as a felony in its own right, does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions.

VI

The Court of Appeals Opinion

**{¶28}** The court of appeals in this case cited four cases from other appellate districts that held that double jeopardy principles are generally *not* violated when a releasee is imprisoned for committing an offense that violated the terms of his postrelease control and is subsequently criminally prosecuted for the same offense. Those four cases are *State v. Holder* (June 12, 2000), 12th Dist. No. CA99-09-117,

2000 WL 745315; *State v. Wellbaum* (Sept. 1, 2000), 2d Dist. No. 2000-CA-5, 2000 WL 1232773; *State. v. Jeter* (Sept. 13, 2000), 9th Dist. No. 99CA007505, 2000 WL 1288299; *State v. Hite* (Dec. 14, 2000), 8th Dist. No. 77374, 2000 WL 1844749.

{¶29} The court of appeals in this case purportedly accepted the general principle espoused in all four of those cases, i.e., that double jeopardy principles are not offended by the imposition of the two terms of incarceration. See, also, *State v. Hathy* (Apr. 20, 2001), Ashtabula App. No. 2000-A-0003, 2001 WL 409503, decided on the same day by the same panel of judges who decided the case sub judice. But the court of appeals distinguished the situation in the present case from other situations, such as in *Hathy,* where the defendant had not served the full term of the initial prison sentence before the imposition of the term of incarceration for violation of postrelease control. The court of appeals held, without citation of authority, that when the initial sentence that is the basis for the imposition of postrelease control has been fully served, a term of incarceration imposed for a postrelease control violation is not a "mere reinstatement" of part of the original sentence, but is instead "criminal punishment" for double jeopardy purposes such that it precludes a criminal prosecution for the conduct that led to the imposition of the administrative term of incarceration.

{¶30} However, the distinction drawn by the court of appeals in the case sub judice is inconsistent with the statements this court made in *Woods*, has no support in the cases cited by the court of appeals for its supposed authority, and is out of step with the decisions of every other appellate district that has considered this issue.

VII

Decisions of Other Appellate Districts

{¶31} Of the four cases decided by other appellate districts cited by the court of appeals below, one of the cases, *Hite*, involved a releasee who, as in *Hathy*, had not served the full initial term of incarceration. In two of the cases cited by the

court of appeals, *Wellbaum* and *Jeter*, it cannot be definitively ascertained from the court of appeals' opinions whether the releasees involved had served the full initial terms of incarceration. However, in the other case cited by the court of appeals, *Holder*, the opinion makes very clear that the releasee *had* served the full term of his initial sentence. Therefore, while the other three cases might conceivably support the distinction drawn by the court of appeals, the court of appeals was unjustified in implying that it was being consistent with *Holder.* A consideration of *Holder* shows that the facts of that case are indistinguishable in all relevant respects from those of the case sub judice.

{¶32} In *Holder*, the defendant was convicted of multiple offenses and sentenced to a one-year prison term and an additional term of postrelease control. He served the full term of his initial sentence and was then released from prison and placed on postrelease control. He failed to report to the APA and missed several appointments required by the terms of his postrelease control. The APA sanctioned him for the violation of postrelease control by imposing a 119-day term of incarceration.

{¶33} Holder was then indicted for escape, in violation of R.C. 2921.34(A)(1), based on his failure to report. He moved the trial court to dismiss the indictment, arguing that it subjected him to double jeopardy. The trial court denied the motion and Holder pled no contest to the charge of escape and was sentenced to one year in prison. On appeal, Holder argued that the trial court should have dismissed the indictment because his double jeopardy rights were violated. The court of appeals affirmed the judgment of the trial court, finding that Holder "was not placed in jeopardy for the offense of escape in the post-release control hearing" because the prison sentence imposed by the APA "was not imposed as punishment for [Holder's] conduct while under post-release control, but rather as a reinstatement of a term of his original sentence."

{¶34} *Holder* is one of the most influential court of appeals opinions in Ohio on this issue. Most other courts of appeals, all of which have found no double jeopardy problems (with the single exception of the case sub judice), have cited *Holder* or another significant case, *State v. Dawson* (Apr. 5, 2000), 5th Dist. No. 1999AP080051, 2000 WL 502823, which was relied on by the *Holder* court, to reach the conclusion that no violation of double jeopardy principles occurs in these circumstances. *Dawson*, which was not cited by the court of appeals in this case, like *Holder,* is factually indistinguishable on all relevant points from the facts of this case. Furthermore, the other three Ohio appellate cases cited by the court of appeals in the case sub judice that concerned double jeopardy challenges to the postrelease control statute, *Wellbaum*, *Jeter*, and *Hite*, all cited *Holder* or *Dawson* (or both) with full approval. Significantly, both *Holder* and *Dawson* were decided before this court decided *Woods*, yet even without the benefit of this court's observations in *Woods*, those courts found that R.C. 2967.28 does not violate the prohibition against double jeopardy.

{¶35} Since *Holder* and *Dawson* have been decided, many other cases, in addition to those cited by the court of appeals in this case, have been decided based on facts that are also fully on point with those of the case sub judice. All have found no violation of double jeopardy principles on the same essential facts as in this case. For example, in *State v. Thompson* (Nov. 2, 2001), Clark App. No. 2000-CA-79, 2001 WL 1346104, an opinion that clearly states that the defendant had served his full initial prison term at the time he was placed under postrelease control, the Second District Court of Appeals found no violation of double jeopardy principles under the same general scenario as in the case sub judice, and summarily affirmed the trial court pursuant to its decision in *Wellbaum*, illustrating that that district does not accept the distinction made by the court of appeals in this case. Similarly, the decision of the Ninth District Court of Appeals in *State v. Fairley* (Apr. 4, 2001), Lorain App. No. 00CA007675, 2001 WL 324376, which involves

the same essential facts as the case sub judice and which was affirmed pursuant to that court's decision in *Jeter* and this court's decision in *Woods*, illustrates that that district also does not make the distinction made by the court of appeals in this case.

{¶36} Moreover, subsequent to the court of appeals' rendering its decision in the instant case, two members of the panel who joined the unanimous decision in this case have reconsidered their positions. Those judges have determined that the case sub judice was wrongly decided and that the distinction drawn in this case is incorrect as a matter of law. See, e.g., *State v. Swank* (Dec. 21, 2001), Lake App. No. 98-L-049, 2001 WL 1647224, and *State v. Swick* (Dec. 21, 2001), Lake App. No. 97-L-254, 2001 WL 1647220. In both of those cases the court decided that the underlying logic of *State v. Martello* (Apr. 20, 2001), Ashtabula App. No. 2000-A-0026, 2001 WL 409508 was "erroneous and should, therefore, be overturned," based on the court's determination that "post-release control is part and parcel of the original sentence." While every other judge in the Eleventh Appellate District now takes the view that R.C. 2967.28 does not violate double jeopardy principles, the judge who authored the opinion we review today has continued to adhere to the position that a Double Jeopardy Clause violation occurs in the circumstances of this case. See, e.g., *State v. Mapes* (Mar. 22, 2002), Lake App. No. 98-L-058, 2002 WL 445071; *State v. Brown* (Mar. 22, 2002), Lake App. No. 98-L-138, 2002 WL 445087.

{¶37} The court of appeals in this case reached its decision after this court decided *Woods,* and acknowledged the statements in *Woods* that have a significant impact on the resolution of the issue raised by this case. The court of appeals did not explain its reasoning that the *Woods* statements should be discounted when a releasee has served the full initial sentence in reaching its ultimate conclusion that double jeopardy principles bar the criminal prosecution of appellee in the circumstances here. However, as detailed above, at least one case cited by the court of appeals involved facts identical to those in the case sub judice, and several cases

14

cited by the court of appeals relied in large part on the statements from *Woods* to conclude that no double jeopardy violation occurs in these circumstances. Moreover, research has disclosed no other court of appeals decision that has found a double jeopardy violation on these facts, and has revealed a host of decisions with virtually identical facts that have concluded that no double jeopardy violation occurs.

{¶38} It is significant that this court has consistently declined to review the decisions that found no violation of double jeopardy principles in the identical circumstances that have been appealed here, with some of the denials by unanimous votes. See, e.g., *State v. Dawson*, appeal not allowed (2000), 89 Ohio St.3d 1465, 732 N.E.2d 998; *State v. Holder*, appeal not allowed (2000), 90 Ohio St.3d 1439, 736 N.E.2d 902; *State v. Hopkins* (Nov. 27, 2000), Stark App. Nos. 2000CA00053 and 2000CA0054, 2000 WL 1751286, appeal not allowed (2001), 91 Ohio St.3d 1481, 744 N.E.2d 1194 (unanimous vote); *State v. Reaves* (Dec. 15, 2000), Richland App. No. 00-CA-42, 2000 WL 1862839, appeal not allowed (2001), 91 Ohio St.3d 1508, 746 N.E.2d 611 (unanimous vote). In addition, this court has declined to review cases that raised double-jeopardy-based challenges to R.C. 2967.28 when the opinion below did not make clear whether the initial sentence had been served in full prior to the imposition of postrelease control. See, e.g., *State v. Wellbaum*, appeal not allowed (2001), 91 Ohio St.3d 1415, 741 N.E.2d 142 (unanimous vote), and *State v. Garcia* (Sept. 10, 2001), Hancock App. No. 5-01-12, 2001 WL 1031459, appeal not allowed (2002), 94 Ohio St.3d 1430, 761 N.E.2d 46 (unanimous vote). Moreover, the United States Supreme Court has declined to review Ohio cases that found no violation of double jeopardy principles in the operation of R.C. 2967.28. See, e.g., *State v. Holder*, certiorari denied (2001), 532 U.S. 946, 121 S.Ct. 1412, 149 L.Ed.2d 353, and *State v. Wellbaum,* certiorari denied (2001), 532 U.S. 1074, 121 S.Ct. 2235, 150 L.Ed.2d 225.

**{¶39}** Given the relevant observations from *Woods* and the fact that this court has repeatedly declined to review decisions that found no violation of double jeopardy protections in exactly these circumstances, it is not surprising that every other Ohio appellate court that has considered this issue has resolved it the same way—with a finding of no violation of double jeopardy principles—with the notable exception of the decision in the case sub judice. And given that two of the judges on the panel that decided this appeal have since determined that the case sub judice was wrongly decided, it now appears that all judges save one who have ruled on this issue have found no violation of double jeopardy principles in this situation.

**{¶40}** In *Woods*, this court noted that pursuant to R.C. 2967.28, a defendant is fully informed at the time of imposition of sentence that "violations of post-release control will result in, essentially, 'time and a half.' " Id. at 511, 733 N.E.2d 1103. The time-and-a-half feature is integral to the postrelease control statute's operation, as postrelease control sanctions are "aimed at behavior modification in the attempt to reintegrate the offender safely into the community." Id. at 512, 733 N.E.2d 1103. The ability to impose a term of incarceration for violation of postrelease control sanctions is an important tool in ensuring compliance with those conditions. To uphold the court of appeals' interpretation here would render that tool ineffective.

**{¶41}** Appellee's double jeopardy rights will not be violated by a criminal prosecution for escape. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.[2]

---

2.　　**{¶a}** For the first time, in an argument not raised below in this case, appellee now argues that he was not properly informed at the time of his initial sentencing in 1997 that he might be subjected to postrelease control. Therefore, appellee argues as a threshold matter, he should not have been subjected to postrelease control and so cannot be prosecuted for "escape" from a "detention" that was not valid. See R.C. 2921.34(A)(1). It appears that appellee never raised the validity of his postrelease control as an issue when it was imposed in 1998, nor when he was found by the Adult Parole Authority in 1999 to have violated the conditions of postrelease control by failing to report to his parole officer and was subsequently incarcerated for 91 days.

16

Judgment reversed

and cause remanded.

MOYER, C.J., F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

DOUGLAS, J., dissents.

PFEIFER, J., dissents.

———————————

**PFEIFER, J., dissenting.**

{¶42} Martello failed to report to his parole officer. That conduct ought not to be excused; nor should it be punished twice. To punish Martello twice violates the Double Jeopardy Clause, Section 10, Article I of the Ohio Constitution and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. As explained in *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, "[T]he Double Jeopardy Clause of each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense."

{¶43} Martello served a 91-day prison term for violating the terms of his postrelease control because he failed to report to his parole officer. Today, a majority of this court has determined that Martello can also be prosecuted for escape, in violation of R.C. 2921.34(A)(1), because he failed to report to his parole officer. Is that not two punishments?

---

{¶b} We decline to address this argument in this appeal. Due to the particular nature of discretionary postrelease control and the specific circumstances of this case and of the initial case in which appellee was sentenced in 1997 (the full record of which is not now before this court), it is not clear at this time whether this argument is foreclosed by principles of res judicata. It is possible that the argument should have been raised on appeal (or could be raised in a motion for leave to file a delayed appeal) to the court of appeals from the trial court's imposition of sentence in 1997. On remand to the trial court, appellee can make the same arguments regarding the imposition of postrelease control that he has made in this court, and appellant will have an opportunity to counter those arguments. One of the issues to be decided at that time will be whether res judicata principles prevent appellee from challenging the imposition of postrelease control relating to his 1997 conviction in this case, which involves his criminal prosecution for escape.

**{¶44}** The majority notes that federal courts in similar circumstances have found that the Double Jeopardy Clause of the United States Constitution is not violated. I am not convinced. I believe that the Double Jeopardy Clause of the Ohio Constitution prohibits a person from being prosecuted for the same action for which that person has already served prison time. Whether the United States Constitution provides less protection is immaterial. I dissent.

————————————

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Angela M. Scott, Assistant Prosecuting Attorney, for appellant.

David H. Bodiker, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

Betty D. Montgomery, Attorney General, David M. Gormley, State Solicitor, Darrell M. Pierre Jr. and Robert L. Strayer, Assistant Attorneys General, urging reversal for amicus curiae Attorney General of Ohio.

————————————