[Cite as *State v. Simpson*, 2019-Ohio-2271.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :      Case No.   18CA18

    vs.                                 :

JUSTIN SIMPSON,                         :      DECISION AND JUDGMENT ENTRY


    Defendant-Appellant.                :

_____

APPEARANCES:

Angela Miller, Jupiter, Florida, for appellant.

Kevin Rings, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   6-3-19
ABELE, J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence.  A jury found Justin Simpson, defendant below and appellant herein, guilty of (1) having weapons under disability in violation of R.C. 2923.13(A)(3), and (2) receiving stolen property in violation of R.C. 2913.51(A).

{¶ 2}   Appellant assigns three errors for our review:

FIRST ASSIGNMENT OF ERROR:

"APPELLANT SIMPSON'S ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO ARGUE THAT R.C. 2929.141 OPERATES AS A BILL OF ATTAINDER AT THE TIME OF SENTENCING.  U.S. CONST. AMENDS. V, VI, XIV; OHIO CONST.

ART. I, SECTIONS 2, 9, 10 AND 16."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED SIMPSON'S RIGHTS UNDER THE OHIO CONSTITUTION AND UNITED STATES CONSTITUTION WHEN IT SENTENCED HIM TO AN ADDITIONAL PRISON TERM FOR A VIOLATION OF POST-RELEASE CONTROL PURSUANT TO R.C. 2929.141, WHICH OPERATES AS A CONSTITUTIONALLY PROHIBITED BILL OF ATTAINDER.  ADDITIONALLY, THE TRIAL COURT VIOLATED SIMPSON'S RIGHTS TO FAIR NOTICE AND DUE PROCESS WHEN IT FAILED TO INCLUDE THE POST-RELEASE CONTROL SPECIFICATION IN THE INDICTMENT.  U.S. CONST. AMENDS. V, XIV; OHIO CONST. ART. I, SECTIONS 2, 9, 10 AND 16."

THIRD ASSIGNMENT OF ERROR:

"APPELLANT SIMPSON'S CONVICTION FOR RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 3}   In January 2018, a Washington County Grand Jury returned a three count indictment that charged appellant with: (1) Burglary in violation of R.C. 2911.12(A)(2); (2) Having Weapons under Disability in violation of R.C. 2923.13(A)(3); and (3) Receiving Stolen Property in violation of R.C. 2913.51(A).

{¶ 4}   At trial, Marietta Police Department Dispatcher Toni Roach testified that as she worked the early morning hours of December 27, 2017, she received a call from Ray Scarborough just prior to 3:30 a.m.  Scarborough, who lived at 152 Harmar Street, reported that after appellant had jumped his fence and attempted to enter his house without knocking, he ran.  Roach dispatched officers to that address.[1]

---

[1]  Marietta Municipal Court Deputy Bailiff Steven Baumgard also testified that he was a dispatcher on December 27 and he dispatched a Marietta police officer to the scene.  Defense counsel questioned Baumgard about the fact that Scarborough initially referred to appellant as Justin Simmons rather than Justin Simpson, and that one of the

{¶ 5}  Marietta Police Officer Michael Bonnette testified that he responded to a call at 152 Harmar Street because Scarborough wanted appellant off his property.  Bonnette explained that the first time they visited the property (around 3:26 a.m.), they could not locate appellant.  However, the second time they found appellant at 152 Harmar (around 3:55 a.m.) and advised him to "stay off the property or he'd be charged with trespassing."  Bonnette also testified that light snow covered the ground that night.

{¶ 6}  Marietta Police Patrolman Trip Giffin testified that he was also dispatched to 152 Harmar Street.  When Giffin exited his cruiser, he observed appellant and heard the residents at 149 Harmar Street "yelling something to the effect that 'he just brought a gun back, we just realized our house is burglarized.'"  Giffin then talked to Lawrence Dawson and Jason Dawson at 149 Harmar, looked inside their ransacked home, then took photos of the gun, doorframe, bedroom, and footprints in the snow.  After appellant's arrest, Giffin took statements from the Dawsons and confiscated appellant's boots, noting that they are "relatable in size" to the footprints in the snow outside the Dawson home.

{¶ 7}  Marietta Detective Sergeant Ryan Huffman testified that he also visited the scene and appellant told him that he had returned a firearm to the Dawsons and did not understand why police were involved.  Officer Giffin also stated that appellant told officers that he "had gotten it [the gun] from a street corner, indicating down the block, on Harmar Street, off an individual who was attempting to sell the firearm."  When further questioned, however, because appellant was evasive and did not give any details, officers believed the story to be false.

---

transcripts of the calls noted that Scarborough referred to appellant as Justin Deems.  Baumgard testified that although he typed Deems, he dispatched officers to look for Justin Simpson.

{¶ 8}   Interestingly, a few weeks before trial the jail administrator informed Officer Huffman that appellant had submitted a request to have the wallet in evidence in his case released to the victim.   Huffman read the request in court, "If the victim's son for my case can be contacted to come pick up his wallet from my property, he said it was given to him from his kids, and he deserves it back."   Appellant listed the Dawsons' address and phone numbers.   Huffman returned the wallet to Jason Dawson and spoke with another neighbor who lives next door to the Scarboroughs.   The neighbor advised Huffman that, at approximately 3:30 to 4:00 a.m. on December 27, appellant had also "banged on her door and woke her up, asked if Matt Johnson was inside of her house, and asked for a cigarette."

{¶ 9}   Lawrence Dawson testified that he lives at 149 Harmar Street with his son, Jason. Dawson explained that he goes to dialysis every Monday, Wednesday and Friday, and he generally leaves his home between 2:00 and 2:30 a.m. and returns between 10:00 and 10:30 a.m.   Dawson stated that on December 27, he arrived home from dialysis around the normal time and found his kicked-in door.   Dawson testified that "everything had been run through- pilfered through and the drawers had been through. * * * But in the meantime, Mr. Simpson showed up and said that he knew where my items was, and I said, 'What items is that?'   And he says, 'The items.' * * * And he says, 'I'll bring them back to you.' * * *   Well, when he returned, the only thing he had on him was the handgun.   And that's what he returned about five minutes later.   Dawson testified that when appellant returned the gun he said, "I brought it back; now how about a finder's fee?"   Dawson explained that after the police arrived, he and his son realized that other items were also missing. Dawson further stated that a Mountain Frost soda can sat on the coffee stand in the dining room, "which we don't drink that brand of soda."   Dawson testified that appellant told him that he got

Dawson's items "off of somebody else, but I never did get a name from him." Dawson also testified that he had never seen appellant before that day.

{¶ 10} Jason Dawson, Lawrence Dawson's son, testified that in December 2017 he would occasionally stay at his father's home. On December 27, 2017, Jason testified that he received a call from his father who said he had just come home from dialysis to find his front door hanging wide open and the doorjamb broken. Jason stated that his father told him his home "had been gone through, and there looked like to be a pop can sitting there by the coffee pot." Jason testified that when he arrived, he saw footprints in the yard, and Lawrence told him that a man had been there "saying he wants to bring back our goods, that he knows where they're at." Lawrence told Jason that the man went after the items "down the street." Jason testified that when he arrived, appellant had been in the house and "laid the gun on the table and was standing back in front of the door." Jason stated that he walked to the table, picked up the gun, looked at it and concluded that it was his gun. Jason asked appellant questions about the other items and who will fix the door. Jason testified that appellant said that "supposedly, somebody brought the weapon to him, wanting to buy some drugs with it." Jason told appellant he wanted to see his identification because "everything was rolling back to him. He couldn't come up with no good names or nothing going on, then it just pointed all right back to him." Jason testified "he pulls his ID out of his pocket, lo and behold, there's my wallet that I had retired. It was in my drawer. How did it get in is [sic] pocket with his information in it? I demanded it back. And he refused, said he just purchased it." Jason identified the wallet in court and recalled that it was the last gift his deceased stepson had given him. Jason further added that both the gun and the wallet had been in the entertainment center in his bedroom.

{¶ 11} Ohio Bureau of Criminal Identification and Investigation Forensic Scientist Jerry Lanfear testified that some of the latent lifts (fingerprints) that had been sent to him had sufficient value, including one lift from the Mountain Frost can that had two fingerprints from appellant's left thumb and left index finger.

{¶ 12} At the close of the state's case, the trial court overruled appellant's Crim.R. 29 motion for judgment of acquittal.   The parties stipulated that appellant was under a disability and could not legally own, purchase, or possess a firearm or dangerous ordnance, and the trial court, at defendant's request, also instructed the jury on the affirmative Good Samaritan defense.

{¶ 13} On May 24, 2018, the jury returned guilty verdicts on counts two (weapons under disability) and three (receiving stolen property).   The jury also found appellant not guilty of count one (burglary) and the lesser included offense.   Moreover, with regard to the receiving stolen property offense, the jury specified that the property involved was a firearm.

{¶ 14} At the July 5, 2018 sentencing hearing, the court ordered appellant to serve thirty months in prison on the weapons under disability charge and seventeen months on the receiving stolen property charge, with the sentences to be served concurrently.   Because appellant was on post-release control at the time of the commission of these offenses, the trial court also sentenced appellant to an additional definite period of one year and ten days to be served consecutively to the sentence imposed in counts two and three, so that in the aggregate, appellant must serve a definite prison sentence of 42 months and 10 days.   This appeal followed.

I.

{¶ 15} Because appellant's first and second assignments of error raise related issues, we will consider them together.   In his first assignment of error, appellant asserts that his attorney provided

ineffective assistance when he failed to argue, at the time of sentencing, that R.C. 2929.141 operates as a bill of attainder.

{¶ 16} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. In any case that involves an ineffectiveness of counsel claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Thus, to show deficient performance, a defendant must prove that counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. Moreover, courts need not analyze both prongs of the *Strickland* test if a claim can be resolved under only one prong. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 17.

{¶ 17} When determining whether counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Because a properly licensed attorney is presumed to execute his duties in

an ethical and competent manner, *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687.

{¶ 18} Appellant argues that his trial counsel's failure to assert that R.C. 2929.141 violates the Bill of Attainder Clause constitutes constitutionally ineffective assistance of counsel. We, however, disagree with appellant.

{¶ 19} R.C. 2929.141 governs sentencing for a felony offense committed while on post-release control and provides that a trial court may terminate post-release control and impose a prison term for the post-release control violation, in addition to any prison term for a new felony. If a trial court imposes a prison term for the post-release control violation, it "shall be served consecutively to any prison term imposed for the new felony." R.C. 2929.141(A)(1).[2]

{¶ 20} The United States Supreme Court has defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Admr. of Gen. Serv.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), citing *United States v. Brown,* 381 U.S. 437, 447, 85 S.Ct. 1701, 14 L.Ed.2d 484 (1965); *see also State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 280, 525 N.E.2d 805 (1988); *State v. Williams*, 88 Ohio St.3d 513, 528, 728 N.E.2d 342 (2000). Thus, a bill of attainder is a law that (1) inflicts punishment, (2) without a judicial trial, (3) upon an identifiable individual. *Williams*, supra, citing *Nixon*, 433 U.S. at 468.

---

[2] R.C. 2929.141(A) provides: "Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, * * * the court may, * * * [i]n addition to any prison term for the new felony, impose a prison term for the post-release control violation."

{¶ 21} In *State v. Ervin,* 11th Dist. Lake Nos. 2009-L-025, 2009-L-26, 2009-Ohio-6382, ¶29, the court discussed the notification at the new felony sentencing and wrote "the General Assembly has indicated its clear intent that the prison term imposed for the violation of post-release control is a reinstatement of part of the original sentence for violating the conditions of supervision, and is not meant to be a separate criminal punishment." *Ervin*, *supra,* at ¶ 31, citing *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 19. Thus, the *Ervin* court determined that, because a prison term imposed for a post-release control violation is not a separate criminal punishment, no need exists for a separate criminal indictment. The Fifth District held similarly in *State v. Wilson,* 5th Dist. Fairfield No. 14-CA-24, 2015-Ohio-1578, when it cited *Ervin* and held that a prison term imposed for a post-release control violation is a reinstatement of part of the original sentence for violating the conditions of supervision, not a separate criminal punishment. Thus, again, no need exists for a separate criminal indictment for a new crime arising from a violation of the conditions of post-release control. *See Wilson*, ¶ 18. These cases support the conclusion that, because a sentence for violating post-release control is part of the defendant's original sentence, the prison term is not imposed without a judicial trial and is not, therefore, a bill of attainder.

{¶ 22} As further support for our conclusion that counsel did not render ineffective assistance of counsel, we point to *State v. Mozingo*, 2016-Ohio-8292, 72 N.E.3d 551,(4th Dist.), where we held that "R.C. 2929.141(A) does not require the trial court in the original sentencing context to notify a defendant that a court sentencing a defendant for a subsequent crime can impose additional sanctions for the violation of post-release control." *Mozingo* at ¶ 29 We pointed out that "there is no constitutional or statutory requirement that a trial court imposing post-release control must notify the offender that a court sentencing the defendant for a subsequent crime can

impose a prison term for a post-release control violation to be served consecutively to a prison term for a new crime." *Id.* at ¶ 23. We acknowledged that, unlike R.C. 2929.19(B) which expressly requires notifications concerning the parole board's authority to impose sanctions for violations, R.C. 2929.141(A) addresses the trial court's authority and is silent about notification in the original sentencing context. *Id.* at ¶ 25. *See also State v. Betts*, 4th Dist. Vinton No. 17CA706, 2017-Ohio-8595, ¶ 12 (trial court need not advise a defendant entering a guilty plea of the potential consequences under R.C. 2929.141 for committing a new crime while on post-release control); and *State v. Murray*, 4th Dist. Highland No. 16CA24, 2017-Ohio-293 (denial of appellant's motion to vacate was supported both by the plain language of R.C. 2929.141(A) and the holdings of this court, as well as the Third, Seventh, Eighth, Ninth, Eleventh, and Twelfth District Courts of Appeals).

{¶ 23} In his second assignment of error, appellant asserts that the trial court erred when it sentenced him to an additional term of post-release control under R.C. 2929.141, which, he argues, operates as a constitutionally-prohibited bill of attainder. However, as we addressed under appellant's first assignment of error, the trial court did not err in sentencing appellant to an additional term for violating post-release control, nor did it err in overlooking the state's failure to include a specification in the indictment for violating post-release control.

{¶ 24} When reviewing felony sentences, courts apply the standard of review set forth in R.C. 2953.08(G)(2) which provides that an appellate court may increase, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Appellant concedes that this court addressed this issue in *Mozingo, i.e.,* that

the trial court does not have to provide specific notice that it can impose a consecutive term of imprisonment for a post-release control violation. *See Mozingo* at ¶ 29. However, appellant argues that this case raises the additional factual distinction that notice was not given at the initial sentencing that the trial court could impose a consecutive prison term for a post-release control violation *and* that no notice was given in the form of a specification in the indictment after the commission of the new offense in the later indictment.

{¶ 25} As we discussed above, this court held in *State v. Betts*, *supra*, at ¶ 2, that the original trial court need not notify a defendant that a court sentencing a defendant for a subsequent crime can impose additional sanctions for violation of post-release control. And, as we noted above, a new indictment is not needed because a violation of post-release control is not a separate criminal punishment. *See Wilson*, *supra*, at ¶ 17, citing *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 19.

{¶ 26} Accordingly, we conclude that appellant has not (1) established that his trial counsel failed to function as counsel guaranteed by the Sixth Amendment to the United States Constitution, and (2) shown that he suffered prejudiced that resulted from his counsel's failure to challenge R.C. 2929.141 as an unconstitutional bill of attainder. Consequently, based upon the foregoing reasons we overrule appellant's first and second assignments of error.

II.

{¶ 27} In his third assignment of error, appellant asserts that his receiving stolen property conviction is against the manifest weight of the evidence.

{¶ 28} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Burris*, 4th Dist. Athens No. 16CA7, 2017-Ohio-454, ¶ 25, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, ¶ 11 (1997) and *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.  "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, citations omitted.  A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000) and *State v. Waller*, 4th Dist. Scioto No. 15CA3683, 2016-Ohio-3077, ¶ 20.

The offense of receiving stolen property is set forth in R.C. 2913.51 which provides:

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

{¶ 29} Appellant acknowledges that he possessed Jason Dawson's stolen gun, but maintains that he was merely "returning property" as a "Good Samaritan" and, thus, should not have been convicted of receiving stolen property.  As appellant also notes, his trial counsel sought, and received, a jury instruction regarding the Good Samaritan defense.

{¶ 30} Obviously, after hearing the trial testimony and reviewing the evidence the jury opted to not believe appellant's theory of the case and found the state's witnesses and evidence to be more compelling.  Multiple witnesses testified that appellant was near the Dawson home around the time

of the burglary.  At around 2:30 a.m. on December 27, 2017, Lawrence Dawson left his home. Neighbor Ray Scarborough called the police department around 3:30 a.m. and stated that appellant had jumped his fence and tried to enter his home.  When Officer Bonnette arrived, he did not find appellant at 3:26 a.m., but when Scarborough called again to complain about appellant on his property police found appellant at 3:55 a.m. and told him not to return to Scarborough's property. When Lawrence Dawson arrived home around 10:00 or 10:30 a.m., he found that his home had been burglarized.  Appellant appeared shortly thereafter and told Dawson that he knew where Dawson's items were located.  When Lawrence Dawson asked "What items is that,?" appellant replied, "The items."  Approximately five minutes later, appellant returned with a gun and asked Lawrence Dawson about a "finder's fee."  Later, when Dawson's son, Jason, arrived and asked appellant to see his identification, appellant retrieved a wallet from his pocket but that wallet belonged to Jason. Also, appellant's fingerprints were lifted from the soda can inside the Dawson home.  Based on the all of the testimony and evidence, the jury had ample competent, credible evidence to find that appellant retained or disposed of property of another while having reasonable cause to believe that the property had been obtained through the commission of a theft offense.

{¶ 31} Furthermore, although appellant argued that he was a good Samaritan in this case, overwhelming evidence adduced at trial supports a different conclusion.  It is important to recognize that a trier of fact may choose to believe all, part or none of any witness who appears before it.

{¶ 32} Accordingly, because it was not against the manifest weight of the evidence for the jury to have found appellant guilty of receiving stolen property, we overrule appellant's third

assignment of error.[3]

### III.

{¶ 33} Accordingly, based upon the foregoing reasons, we hereby affirm the trial court's judgment.

### JUDGMENT AFFIRMED.

---

[3]Appellant's pro se supplemental brief also attempts to raise one assignment of error and argues that he should have received immunity from prosecution, pursuant to R.C. 2923.23(A), for voluntarily safely surrendering the firearm. R.C. 2923.23 provides immunity to one who otherwise would be guilty of having a weapon while under disability as set forth in R.C. 2923.13. R.C. 2923.23(A), which addresses immunity from prosecution for a violation of R.C. 2923.13, provides in relevant part:

> No person who acquires, possesses, or carries a firearm or dangerous ordinance in violation of section 2923.13 or 2923.17 of the Revised Code shall be prosecuted for such violation, if he reports his possession of firearms or dangerous ordnance to any law enforcement authority, describes the firearms of dangerous ordnance in his possession and where they may be found, and voluntarily surrenders the firearms or dangerous ordnance to the law enforcement authority. A surrender is not voluntary if it occurs when the person is taken into custody or during a pursuit or attempt to take the person into custody under circumstances indicating that the surrender is made under threat of force.

Obviously, appellant does not meet any of the elements required for immunity under R.C. 2923.23(A). Appellant did not (1) report the possession of the firearm to law enforcement, (2) describe the firearm to law enforcement, or (3) surrender the weapon to law enforcement. Appellant cites *State v. Gay*, 11th Dist. Portage No. 88-P-2043, 1990 WL 170682 (Nov. 2, 1990), where the court concluded that the trial court did not err in finding that the defendant was not immune from prosecution for having a weapon under disability. Gay argued that because he "surrendered" the weapon to law enforcement, he was immune from prosecution. The court held, however, that he possessed the weapon, both prior to and during the crime, and no indication existed that he intended to surrender the weapon until the police requested the whereabouts of the weapon. *Gay* does not support immunity for appellant, nor does the statute. The evidence in the case at bar supported the state's theory of the case that the firearm is a product of a burglary at the Dawson home, appellant had no intention to surrender the firearm to law enforcement, he only surrendered the gun to the Dawsons and then sought a finder's fee from the Dawsons, and appellant spoke with law enforcement because they were investigating a call regarding his criminal trespass at another home. Thus, appellant is not entitled to immunity pursuant to R.C. 2923.23.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.   The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.   If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.