[Cite as *State v. Howse* , 2020-Ohio-916.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108414 |
| v. | : | |
| ROBERT D. HOWSE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 12, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-632777-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eleina K. Thomas, Assistant Prosecuting Attorney, *for appellee.*

Ruth R. Fischbein-Cohen, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Robert Howse, appeals his convictions and sentence. He raises three assignments of error for our review:

1. The court erred in neglecting to place Robert Howse in the mental health docket.

2. Trial counsel was ineffective as guaranteed by the Sixth Amendment of the United States Constitution.

3. The court erred in sentencing Robert Howse to separate punishments while this case is one of allied offenses of similar import which should have merged the punishments.[1]

**{¶ 2}** Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

**{¶ 3}** In October 2018, Howse was indicted on 11 counts, including Counts 1 and 4, aggravated burglary in violation of R.C. 2911.11(A)(2), first-degree felonies (two named victims); Count 2, burglary in violation of R.C. 2911.12(A)(1), a second-degree felony; Counts 3 and 8, having weapons while under a disability in violation of R.C. 2923.13(A)(2), third-degree felonies; Count 5, aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; Count 6, robbery in violation of R.C. 2911.02(A)(1), a second-degree felony; Count 7, kidnapping in violation of R.C. 2905.01(A)(2), a first-degree felony; Count 9, grand theft in violation of R.C. 2913.02(A)(4), a third-degree felony; Count 10, theft in violation of R.C. 2913.02(A)(4), a fifth-degree felony; and Count 11, disrupting public service in violation of R.C. 2904.04(A)(3), a fourth-degree felony. The burglary, aggravated burglary, robbery, aggravated robbery, and kidnapping counts carried one- and three-year firearm, notice of prior conviction, and repeat violent offender

---

[1] Howse did not raise any issue challenging the trial court's imposition of the maximum sentence on each individual count or challenge the trial court's imposition of consecutive sentences. This court will only address assignments of error that are raised in the appeal. *See* App.R. 12 ("[A] court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21.").

specifications. The grand theft and theft carried one- and three-year firearm specifications.

{¶ 4} The charges arose after two incidents that occurred within "a span of less than 48 hours." First, around 12:00 a.m. on September 13, 2018, a female victim walked into her bedroom and noticed that the screen door was open. She then saw a pair of shoes "sticking up from the side of the bed." A man jumped up and pointed a gun at her. She screamed, ran into her bathroom, locked the door, and called 911.

{¶ 5} The second incident occurred around 8:30 p.m. on September 14, 2018. A male victim noticed that a light was on in his barn, which had been converted to a living area with a bar, entertainment area, and an office. The barn was approximately 20 yards from the house. The victim walked to the barn and was going to turn the light off when Howse "pops up from behind the bar, threatens to shoot [the victim], points a gun at him, [and] starts asking him where money is." Howse then noticed that there was a safe in the barn. Howse pointed the gun at the victim's head and made him walk to the safe and open it. Once the safe was open, Howse made the victim get on the ground. At this point, the victim noticed that Howse had "a GPS monitor on his ankle." Howse rummaged through the safe and found a leather handbag. Howse filled the handbag with a handgun, alcohol, headphones, a camera, and equipment for the camera.

{¶ 6} Howse then began asking the victim where the money was. The victim stated that he did not have any money on him because it was in the house. After approximately 30 minutes, Howse took the victim by gunpoint from the barn

to his house. Howse asked the victim who was in the house. The victim responded that his wife and children were in the house and that "he wasn't getting in the expletive house." When the victim swore at Howse, Howse threatened to shoot him in the head. The victim cracked the door open and yelled to his wife, "Give me all the money you can find." The victim's wife grabbed the money from her husband's wallet and realized that they were being robbed. The victim's wife gave the money to her husband, who then gave it to Howse. The victim's wife then called 911. As Howse was picking up "his bag" to put the money in it, the victim was able to escape and lock himself in his house. The victim ran upstairs to get his gun and waited for police to arrive. Police found Howse through the GPS monitor on his ankle.

{¶ 7} At a January 3, 2019 hearing, the state and defense counsel informed the court that they had reached an agreement. The state explained that Howse would plead guilty to the indictment as charged in exchange for the state agreeing that it would "not go back into the grand jury prior to trial and add the 54-month firearm specification that [Howse] was actually eligible for at the time" the state originally filed the charges against him. The state explained that the 54-month firearm specification applies because Howse had a prior conviction for firearm specifications.

{¶ 8} Defense counsel agreed that the state's recitation of the plea agreement was correct. Defense counsel further explained that he had advised Howse of the rights he was waiving by entering into the plea and that Howse understood those rights.

{¶ 9} The trial court then began the plea colloquy with Howse. When asked if he was satisfied with his defense counsel, however, Howse responded, "No." The trial court told Howse that if he was not satisfied with his defense counsel, it could not take a plea from him.

{¶ 10} The trial court asked the parties if it had set a trial date for Howse's case. The state replied that the trial was set for January 14, 2019. The court stated, "So, we'll have a trial on January 14th." The state interjected, asking the court if it could explain about "the expiration of this plea deal." The state told the court that the same plea offer had been given to Howse's prior attorney as well. Howse's prior attorney had been appointed for him but then Howse had retained the attorney who was representing him at the current plea hearing. The state told the court that it wanted to make sure that Howse's retained attorney was fully advised of the "deadline that we're working against here." The court responded, "Well, the trial date is January 14th, period."

{¶ 11} At that point, defense counsel asked the trial court to be removed from the case due to the fact that the state was going to "re-present this" to the grand jury and that Howse's new counsel would "have to deal with [the] 54-month gun specs." After a series of questions to Howse regarding whether he wished to keep his retained counsel or have another attorney appointed, which the trial court explained to Howse that it would delay his "speedy trial" even more and the state would definitely add the 54-month firearm specification, Howse told the court that he would "take the plea."

{¶ 12} The trial court stated that it needed to ensure that Howse was entering into his plea voluntarily. The court asked the state if it would delay adding the 54-month firearm specification if it appointed new counsel. The state agreed that it would if there was "a time limit." The state indicated that it could "provide discovery immediately" since it had already "provided it twice in this case." The state told the court that it would give Howse's new attorney "two weeks" and "if after the two weeks he still has not plead guilty, then we will go back to the grand jury." The state indicated that this was "the very last time" that it would offer the same plea.

{¶ 13} Howse told the trial court that he was never informed of the plea offer from his previous attorney. Both the state and Howse's retained counsel stated that they would inform Howse's newly appointed attorney of the plea offer. The court then explained that it would appoint new counsel for Howse within the next couple of days.

{¶ 14} At a January 24, 2019 hearing, the trial court asked the parties if they had reached a plea agreement. Both the state and Howse's new defense counsel stated that they had.

{¶ 15} Defense counsel then asked the trial court if "a psych report" had been done. The court replied, "Yes." Defense counsel replied, "I just wanted to clear up something. It appears in my review of the report that my client was eligible for the mental health docket and could have been transferred to the mental health docket which you elected to keep the case. Is that correct?" The court responded, "That's correct."

{¶ 16} Defense counsel then asked if he read the report correctly that there was nothing in the report that suggested Howse was incompetent. The court replied, "I thought they found him competent." Defense counsel said that they did find him competent, but "they found him eligible" for "Northcoast * * * because of his IQ results." The court replied, "All right. So prior to you becoming involved in this, * * * we did handle that matter. He was not sent to North Coast as he was not incompetent. And so if he's not incompetent, I don't see any purpose in sending him to North Coast, despite the psychiatric recommendation."

{¶ 17} The trial court then asked defense counsel if he "had any trouble discussing the case" with Howse. Defense counsel told the court that he had not. The court then asked, "Do you believe he understands what's going on here today after talking to him?" Defense counsel stated he did. The court stated that it was satisfied that Howse was competent.

{¶ 18} The state explained that Howse was going to plead guilty to the indictment in exchange for the state not going back to the grand jury to replace the three-year firearm specification with a 54-month firearm specification and replace the one-year firearm specification with an 18-month firearm specification because of Howse's "prior gun specification conviction." The state told the court that no other threats or promises had been made "other than what's been stated here on the record."

{¶ 19} The trial court then explained each offense to Howse and the maximum penalty associated with each offense. The court also explained the applicable postrelease control to Howse and the consequences for violating it.

{¶ 20} In response to the trial court's questioning, Howse stated that he was 24 years old, that he had gone to college but did not complete it, that he was not under the influence of drugs or alcohol, and that he was satisfied with his defense counsel. Howse also told the court that he was on postrelease control from another case. The court asked Howse if he understood that he could receive an additional sentence on that case and then "get a sentence consecutive to that on this case." Howse responded that he did. The court also explained Howse's constitutional rights to him and asked if he understood that he was waiving those rights. Howse responded that he did.

{¶ 21} Howse then pleaded guilty to each offense as charged in the indictment. The trial court found that Howse entered into his guilty plea knowingly and voluntarily and accepted Howse's guilty plea.

{¶ 22} The trial court sentenced Howse as follows:

Count 1 (aggravated burglary relating to the first female victim) — 11 years consecutive to three years for the firearm specification

Count 2 (burglary relating to the first female victim) — merged with Count 1

Count 3 (weapons disability) — 36 months

Count 4 (aggravated burglary relating to the male victim) — 11 years consecutive to three years for the firearm specification

Count 5 (aggravated robbery relating to the male victim) — 11 years consecutive to three years for the firearm specification

Count 6 (robbery relating to the second female victim) — 11 years consecutive to three years for the firearm specification

Count 7 (kidnapping relating to the male victim) — 11 years consecutive to three years for the firearm specification

Count 8 (weapons disability) — 36 months

Count 9 (grand theft) — merged with Count 5

Count 10 (theft) — merged with Count 5

Count 11 (disrupting public service) — 12 months

{¶ 23} The trial court ran Counts 1, 3, 5, 6, and 8 consecutive to one another and all other counts concurrent to those and each other, for an aggregate sentence of 45 years in prison (39 years plus 72 months). The trial court imposed a mandatory period of five years of postrelease control and $2,180 in restitution to the male victim. The court also ordered Howse to pay costs. It is from this judgment that Howse now appeals.

## II. Mental Health Court

{¶ 24} In his first assignment of error, Howse argues that his trial court erred and violated "his due process privilege" when it chose not to assign him to the mental health and developmental disabilities ("MHDD") docket.

{¶ 25} In late October 2018, Howse's first appointed counsel filed a motion to determine Howse's eligibility in the mental health court. In the motion, defense counsel stated that transfer to the mental health court is appropriate when a defendant has a "severe mental illness with psychotic features," which he asserted

would qualify Howse. Defense counsel stated that when he met with Howse at the county jail, Howse informed him that he had previously been diagnosed with post-traumatic stress disorder from when he discovered his uncle's body after he had shot himself. Defense counsel further stated that even "more compelling" was the fact that Howse told him that he had been diagnosed with paranoid schizophrenia when he was in the Cuyahoga County Juvenile Detention Center around 2010. Based upon Howse's possible posttraumatic stress disorder ("PTSD") and paranoid schizophrenia diagnoses, defense counsel maintained that Howse should be evaluated by the court's psychiatric clinic to determine if he should be placed in mental health court.

{¶ 26} The trial court referred Howse to the court's psychiatric clinic on November 7, 2018, and received the "Mental Health Court Eligibility Report" in December 2018. According to the his "educational history," Howse reportedly received his GED in 2015 "and was enrolled in business administration classes at Cuyahoga Community College for about three weeks prior to his arrest." During the "mental status evaluation," the psychologist reported that Howse's "thought processes were intact and his statements were consistent and coherent." The psychologist reported that Howse's IQ was 73. Based on his IQ results, the psychologist diagnosed Howse with borderline intellectual functioning. She concluded that Howse met the criteria for mental health court because persons with an IQ under 75 are eligible. The psychologist further diagnosed Howse with PTSD, which resulted from Howse watching his uncle shoot himself in front of Howse when

he was four years old.  She also stated that Howse experienced symptoms of depression, and met the criteria for alcohol and cannabis use disorder based upon Howse's report of such use.

{¶ 27} Loc.R. 30.1 sets forth "Assignment of Criminal Cases to Mental Health and Developmental Disabilities Dockets."  It states that defendants with "confirmed severe mental illness with a psychotic feature or developmental disabilities, as determined by the court's guidelines set forth in the Appendix C hereto are to be assigned to an MHDD docket."  Loc.R. 30.1(A).  The rule further provides that "[a]t arraignment, * * * there will be a random assignment of identified MHDD defendants to MHDD judges."  However, "[i]n cases where it is determined after assignment to a non-MHDD judge that the defendant qualifies for the MHDD docket, the assigned judge may apply to the administrative judge for transfer of the case to the MHDD docket."  Loc.R. 30.1(C)(2)(a).

{¶ 28} This court has explained that Loc.R. 30.1, "[t]hrough the use of 'may,' * * * authorizes, but does not mandate, a transfer of a defendant to the common pleas court's mental health docket." *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 30. *See also State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-1634, ¶ 3 ("In a case where the mental health of the defendant is not determined until after arraignment, assignment to the mental health docket is discretionary."); *State v. Lee*, 8th Dist. Cuyahoga No. 99796, 2014-Ohio-205, ¶ 14 ("Loc.R. 30.1 does not mandate the transfer of a case after arraignment. Indeed, '[t]hrough the use of "may," the rule authorizes, but does not mandate, a transfer of

a defendant to the common pleas court's mental health docket under certain circumstances.'").

{¶ 29} In *Ellis*, the trial court was aware of Ellis's mental health issues but did not deem a transfer necessary. *Id.* This court reviewed the transcript of the proceedings. We determined that although the court was aware of Ellis's mental health issues, it did not find his competency to be an issue. We further determined that Ellis was able to assist in his defense throughout the proceedings. We concluded:

> [T]he trial court did not commit an error, plain or otherwise, in not transferring Ellis to the mental health docket. The record does not reveal indicia of Ellis's lack of competence to stand trial or inability to assist in his defense, despite any potential mental health issues. He fails to demonstrate prejudice. The fourth assignment of error is without merit.

*Id.* at ¶ 35.

{¶ 30} Similarly, in *Jones*, this court concluded:

> Nothing in the record shows that the court abused its discretion by not transferring the case to the mental health docket. Although Jones's evaluations determined that she was a candidate for transfer to the mental health docket, the evaluation determined also that she was competent to stand trial and her mental health issues did not prevent her from knowing that her conduct was wrong.

*Id.* at ¶ 6.

{¶ 31} In this case, the court's psychiatric evaluation indicates that Howse was eligible for the MHDD docket due to his diagnosis of borderline intellectual functioning IQ of 73. Despite what Howse's psychiatric evaluation states, the trial

court did not have to transfer his case to the MHDD docket. It had the discretion to keep the case under Loc.R. 30.1.

{¶ 32} Moreover, the trial court determined that Howse was competent, was able to understand the proceedings, and was able to assist his defense counsel. We further reviewed the record in this case. There is nothing in the transcript or mental health evaluation to indicate Howse was unable to understand the charges against him, the penalties he faced, and assist in his own defense. Indeed, according to Howse's mental health examination, Howse's "thought processes were intact and his statements were consistent and coherent." Thus, we cannot say that the trial court abused its discretion when it decided to keep Howse's case on its docket rather than transfer it to the MHDD docket.

{¶ 33} Howse's first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 34} In his second assignment of error, Howse contends that his trial counsel was ineffective for "failing to illuminate to the court his psychological and/or psychiatric condition, as an aid to the court, hence, the within trial judge could not assess his mental capacity appropriately during the entire duration of the proceedings."

{¶ 35} To establish that trial counsel was ineffective, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall below an

objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. *See State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 36} Moreover, to succeed on an ineffective-assistance-of-counsel claim, the defendant must show prejudice. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998). To show prejudice, defendant must establish that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* and *Bradley*. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 37} First, defense counsel's performance was not deficient. Howse's first appointed counsel filed a motion for the trial court to order Howse to be evaluated by the court's psychiatric clinic to determine Howse's eligibility for the MHDD docket. The record further establishes that his second appointed counsel raised the issue with the trial court before Howse entered into the plea. Thus, we find that both defense attorneys properly raised the issue.

{¶ 38} Even if we agreed with Howse that his defense counsel "failed to illuminate" his psychological condition to the trial court, however, the result of the proceedings would have been the same. We have already found that the trial court did not abuse its discretion when it chose to keep Howse's case rather than transfer it to the MHDD docket. Although Howse's IQ was borderline, he was competent to

stand trial, able to understand the charges against him, the penalties he faced, and assist in his own defense.

{¶ 39} Accordingly, Howse's second assignment of error is overruled.

## IV. Allied Offenses

{¶ 40} In his third assignment of error, Howse argues that the trial court erred when it failed to merge "the multiple burglary, thefts, and robbery charges."

{¶ 41} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7. But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 42} In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component

elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 344 N.E.2d 133 (1976).

{¶ 43} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 44} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. In *Ruff*, the Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 45} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving

separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 46} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 47} It is difficult to determine exactly what offenses Howse is claiming should have merged. His entire argument is as follows:

> It is questionable whether the multiple burglary, thefts, and robbery charges are cumulative. The only exception would be if the conduct was separate or with two victims. Herein, the theft occurred upon the male victim. The female was in the house, and nothing was taken from her. Based on the state's information, the female victim was neither assaulted nor robbed. At the very most, she was a witness who saw the male being robbed. She ran to the bathroom where she locked herself in, and called 911. Perhaps the facts herein sentence can be explained as kidnapping if a burglary was not connected to the same crime. However, the multiple counts of burglary, theft, and robbery, are an exaggeration of counts. If the theft upon the man was in the house, it is a burglary. If it is outside, it is a robbery, however, they are not two crimes, nor are they cumulative, since the theft only occurred upon the man.

(Transcript citations removed.)

{¶ 48} Howse appears to be arguing that he only committed offenses against the male victim. He also appears to get the facts from the first incident involving the first female victim (who found Howse on the floor beside her bed and ran into her bathroom) confused with the facts from the second incident involving the second female victim (the male victim's wife who obtained the money out of his wallet to give to Howse). Nonetheless, there were three victims in this case: the first female

from September 13, 2018, and then the husband and wife victims from September 14, 2018.

{¶ 49} At the sentencing hearing, the court indicated that the parties had reached an agreement on what offenses merged for purposes of sentencing: Counts 1 and 2, and Counts 5, 9, and 10. Counts 1 (aggravated burglary) and 2 (burglary) were Howse's crimes against the first victim who walked into her bedroom and found Howse hiding on the floor on the side of her bed. Counts 5 (aggravated robbery), 9 (grand theft), and 10 (theft) were Howse's crimes against the male victim who found Howse in his barn.

{¶ 50} Howse only claims that his "burglary, thefts, and robbery" counts should merge. After removing the offenses that the trial court already merged, that only leaves Count 4 and Count 6 remaining that involve "burglary, thefts, and robbery" counts. Count 4 involved aggravated burglary naming the male as the victim. Count 6 involved robbery naming the male's wife as the victim. Thus, we will determine if either Count 4 or Count 6 should have merged with other counts.

{¶ 51} Count 6 charged Howse with robbery under R.C. 2911.02(A)(1). This provision states that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control[.]" This count would not merge into any other count because it is the only count involving the second female victim: the wife of the male victim. Thus, the offense has dissimilar import from all of the other offenses because it involves a separate and identifiable

victim. *See Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph two of the syllabus.

{¶ 52} That leaves Count 4, which charged Howse with aggravated burglary under R.C. 2911.11(A)(2). This offense provides:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 53} Howse seems to contend that this offense should merge with Count 5, Howse's aggravated robbery conviction under R.C. 2911.01(A)(1) involving the male victim. This provision states:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

{¶ 54} Under *Ruff*, we must consider these offenses in the context of appellant's conduct to determine (1) if the offenses were dissimilar in import or significance; (2) if the offenses were committed separately; or (3) if the offenses were committed with a separate animus or motivation. If any of these three factors apply to Howse's conduct, the offenses are not subject to merger pursuant to R.C. 2941.25. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 25.

{¶ 55} After review, we conclude that the aggravated burglary and aggravated robbery offenses should not have merged because they were committed

separately. Howse committed the aggravated burglary when he trespassed into the male victim's barn with purpose to commit a theft and threatened the victim with harm by pointing a gun at his head. The aggravated robbery was committed when Howse held the gun to the male victim's head while standing outside of the victim's house with the intent to commit a theft. Thus, the trial court did not err when it did not merge Howse's aggravated burglary conviction with his aggravated robbery conviction.

{¶ 56} Accordingly, Howse's third assignment of error is overruled.

{¶ 57} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
RAYMOND C. HEADEN, J., CONCUR