[Cite as *State v. Boyd*, 2020-Ohio-5181.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 109052

    v.                                  :

CARDELL BOYD,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 5, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636070-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brandon Piteo, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Cardell Boyd, appeals his sentence. He raises two assignments of error for our review:

> 1. Appellant's sentence is contrary to law because the record does not support the individual sentences or the imposition of consecutive sentences.

2. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.

{¶ 2} Finding no merit to his assignments of error, we affirm the trial court's judgment.

## I. Procedural History and Factual Background

{¶ 3} The charges in this case arose from Boyd's back-to-back attempts to kill his wife. Because each attempt caused her serious injury but failed to kill her, he continued to try different methods. On January 1, 2019, Boyd thought he found evidence that his wife had been unfaithful to him. Boyd and his wife argued, he followed her to their kitchen, and he repeatedly stabbed her in the back with a butcher knife. He then turned on the gas from their stove, pushed her to the ground, held the knife to her throat, and choked her while shouting that he was going to kill her. Boyd's wife faked unconsciousness, and Boyd went to retrieve a can of gasoline from their garage. When he left, his wife stood up and opened the living room window. Boyd sprayed gasoline on her through the window and then went inside the house. Boyd's wife "dove" through the window, ran to the neighbors' house, and knocked on their door. Boyd caught her by the neck at the neighbors' door, "dragged" her back toward their house, and poured the rest of the gasoline on her head. He then tried to set her on fire with a lighter. Before Boyd could get the lighter to ignite, the neighbors approached with a firearm, and Boyd fled to his wife's car. While Boyd's wife tried to catch her breath near a tree in their front yard, Boyd accelerated the car toward her. She ran behind the tree, and Boyd crashed the car

into the tree. Boyd left the scene in a different vehicle, and the neighbors called 911. EMS took Boyd's wife to the hospital, where she was treated for a collapsed lung, four stab wounds to her lower spine, ingestion of gasoline, gasoline in her lungs, abrasions to her ankles, and bruises on her upper left chest and arm. At the time of the offenses, Boyd was serving community control sanctions for a charge of domestic violence against his wife. *Garfield Hts. v. Boyd*, Garfield Hts. M.C. No. CRB 1802387 (Nov. 19, 2018).

{¶ 4} In May 2019, Boyd pleaded guilty to six counts: felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with the knife as the deadly weapon; felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with the motor vehicle as the deadly weapon; domestic violence in violation of R.C. 2919.25(A), a third-degree felony; abduction in violation of R.C. 2905.02(A)(2), a third-degree felony; attempted aggravated arson in violation of R.C. 2909.02(A)(2), a third-degree felony; and aggravated menacing in violation of R.C. 2903.21(A), a first-degree misdemeanor. The parties agreed that Boyd would have no contact with his wife. The trial court referred Boyd for a presentence investigation and mitigation of penalty report.

{¶ 5} At the sentencing hearing in June 2019, the trial court heard from Boyd's wife, Boyd's daughter from another relationship, one of Boyd's friends, and Boyd. Boyd's wife said that this incident was the third time Boyd had physically abused her, and she had obtained a protection order against him in 2018 from the Garfield Heights Municipal Court. She thought the January violence occurred

because Boyd discovered that she had filed for divorce. She described his attacks from January 1, 2019, and told the trial court that she is still in a lot of pain. She expressed fear of what Boyd may do to her in the future and "beg[ed]" the trial court to "lock him up so he can't do this to [her] again." She did not seek any form of restitution for her medical expenses. Boyd's daughter described Boyd as a caring, supportive, and good man. She explained that Boyd had family support, and she asked that he be allowed to come home. Boyd's friend said that Boyd was a hard worker, loving, and very involved in his community and church. Boyd apologized to his family.

{¶ 6} The trial court heard from each counsel, respectively. The state outlined Boyd's criminal history, acknowledged that Boyd did not serve prison time for any of his prior offenses, and asked the trial court to impose the maximum, consecutive prison sentence. The state also recounted the details of Boyd's conduct on January 1, 2019. The state started to tell the trial court about other women who came forward with allegations that Boyd had abused them, but Boyd's counsel objected, and the trial court instructed the state to focus on the events of this case. The state submitted photos of the knife, damaged vehicle, damaged tree, gasoline can, skid marks in the front yard, blood and scattered items on the kitchen floor, and injuries on his wife's back. The trial court admitted the photos over Boyd's objection. Boyd's counsel did not challenge any part of the state's recitation of the events.

{¶ 7} The trial court also heard arguments regarding which counts were allied offenses of similar import. The trial court recognized that the parties

stipulated that the domestic violence count merged with one of the felonious assault counts. The trial court then found that the two counts of felonious assault, the abduction count, and the count for attempted aggravated arson were each separate offenses with a separate animus, and not allied offenses of similar import.

{¶ 8} After indicating that it had considered the presentence investigation report, both parties' sentencing memoranda, the attorneys' statements, Boyd's wife's statement, statements made on Boyd's behalf, and sentencing laws, the trial court sentenced Boyd to prison for a total of 17 years as follows: seven years for felonious assault with a knife, three years for felonious assault with a vehicle, two years for abduction, seven years for attempted aggravated arson, and 178 days for aggravated menacing. The trial court imposed no sentence for domestic violence, explaining that it merged with felonious assault with a knife. The trial court ordered that the sentences for both felonious assault counts and attempted aggravated arson run consecutively to one another, and the sentences for abduction and aggravated menacing run concurrently with the sentence for felonious assault with a knife.

{¶ 9} Further, the trial court declared Boyd to be an arson offender and informed him of the accompanying registration requirements and the consequences he would face if he violated them. The trial court told Boyd that he faced a mandatory three years of postrelease control when he was released from prison, advised him of the consequences if he were to violate postrelease control, and ordered that he pay $501.04 in court costs but said that the costs may be satisfied through community service. The trial court imposed no fines or restitution and

granted Boyd 178 days of jail-time credit. The trial court informed Boyd of his right to appeal and told him it would appoint counsel for him.

{¶ 10} In September 2019, over two months after the sentencing entry, Boyd filed a motion for leave to file a delayed appeal of the trial court's sentencing entry. This court granted his motion and assigned him counsel.

## II. Lawfulness of Sentence

{¶ 11} In his first assignment of error, Boyd argues that his sentence is contrary to law because the record does not support the length of his individual sentences or the imposition of consecutive sentences.

### A. Individual Sentences

{¶ 12} Boyd first argues that the record does not show that the trial court properly considered R.C. 2929.11 and 2929.12 when it sentenced Boyd for felonious assault with a knife and attempted aggravated arson. He contends that the trial court did not explain why a seven-year prison term for each count was necessary to protect the public and punish Boyd without imposing unnecessary burdens on government resources. He maintains that the trial court did not "go through the sentencing factors" of R.C. 2929.12(C), and that those factors weigh in favor of a shorter sentence. He argues that there are substantial grounds to mitigate his conduct because he suffered from depression, loved his wife, had never been to prison, and was "reasonable, presentable, and cooperative."

{¶ 13} "An appellate court must conduct a meaningful review of the trial court's sentencing decision." *State v. McHugh*, 8th Dist. Cuyahoga No. 108372,

2020-Ohio-1024, ¶ 11. For felony sentences, an "appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). Instead, R.C. 2953.08(G)(2) provides that appellate courts "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the reviewing court "clearly and convincingly" finds that (a) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or that (b) "the sentence is otherwise contrary to law." The Ohio Supreme Court has further explained:

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23.

{¶ 14} When sentencing a defendant, the court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

{¶ 15} R.C. 2929.11(A) states that when sentencing an offender for a felony, the trial court shall be guided by the overriding purposes of felony sentencing, which are (1) "to protect the public from future crime by the offender and others," (2) "to

punish the offender," and (3) "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To achieve these purposes, "the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶ 16} R.C. 2929.11(B) requires trial courts to impose sentences that "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing[.]" The sentences must also be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim" and be "consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 17} R.C. 2929.12 sets forth a nonexhaustive list of factors that the court must consider in relation to the seriousness of the underlying crime and likelihood of recidivism, including "(1) the physical, psychological, and economic harm suffered by the victim, (2) the defendant's prior criminal record, (3) whether the defendant shows any remorse, and (4) any other relevant factors." *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 26, citing R.C. 2929.12(B) and (D). The trial court must also consider factors tending to show that the "offender's conduct is less serious than conduct normally constituting the offense," including:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

R.C. 2929.12(C).

{¶ 18} Trial courts do not need to make factual findings on the record pursuant to R.C. 2929.11 or 2929.12 before imposing a sentence within the statutory range of an offense, as long as the trial court "considers" the statutory factors. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one and two of the syllabus; *McHugh*, 8th Dist. Cuyahoga No. 108372, 2020-Ohio-1024, at ¶ 17; *State v. Cooke*, 8th Dist. Cuyahoga No. 108824, 2020-Ohio-2725, ¶ 55-60. "Consideration of the factors is presumed unless the defendant affirmatively shows otherwise." *State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12. "This court has consistently recognized that a trial court's statement in the journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *Kronenberg* at ¶ 27.

{¶ 19} To support his argument that the trial court needed to make "separate and distinct findings" pursuant to R.C. 2929.11 and 2929.12, Boyd cites to *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197, ¶ 21 (8th Dist.), and *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-4177, 16 N.E.2d 659, ¶ 29. However, these cases explain that trial courts must make specific findings when imposing consecutive sentences

pursuant to R.C. 2929.14(C)(4) — not when considering the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12.

{¶ 20} Although the trial court had to consider R.C. 2929.11 and 2929.12 when sentencing Boyd, it did not need to make findings on the record when it chose to impose seven years each for felonious assault with a knife and attempted aggravated arson, which was within the statutory range and one year short of the maximum sentence for each offense. The trial court said at the sentencing hearing that it considered all the information that was before it, including "the sentencing laws of R.C. Chapter 2929." It also stated in the sentencing entry that it considered all required factors of the law and that prison is consistent with the purpose of R.C. 2929.11.

{¶ 21} The trial court also explicitly considered the factors set forth in R.C. 2929.12(C) during the sentencing hearing. The trial court explained that despite the mitigating factors, Boyd's conduct still needed to be punished:

> I do believe that any one of us in this room, even those who support [Boyd's wife], can understand why a person loses control, gets triggered to just violate their basic instinct towards decency. I do think all of us can understand that. Of course, when that does happen, an appropriate punishment still has to be given.
>
> * * *
>
> And by the way, I acknowledge and I accept as true all of the good things said about you by your friend and your daughter. I would just counter what they said by saying, and don't get me wrong here, you're not, you haven't been convicted here of killing a person, but even a murderer can be a good person. They do need though to be punished for the crime they committed. And here once again I have to say I'm not calling

you a murderer, but I do believe you need to be punished for the highly unusual and highly personal nature of the violence you committed.

The trial court also acknowledged that Boyd had been reasonable, presentable, courteous, and cooperative in court but observed that Boyd's conduct was "of the sort that [the trial court had] rarely seen in this position."

{¶ 22} Although the trial court may not have stated all its findings relating to the factors in R.C. 2929.11 and 2929.12, we find by our own review that the record clearly and convincingly supports the individual sentences for felonious assault with a knife and attempted aggravated arson. Boyd first tried to kill his wife by repeatedly stabbing her with a butcher knife, causing her to suffer a collapsed lung and four stab wounds to her lower spine. When she managed to escape to the neighbors' house, he dragged her by her neck and poured a can of gasoline on her. Boyd then took out a lighter and tried to set his wife on fire. Boyd's attempted arson caused his wife to ingest gasoline and gasoline to infiltrate her lungs. Boyd's attempts to kill his wife also caused her to suffer abrasions to her ankles and bruises to her chest and arm. If the neighbors had not intervened, Boyd's wife would likely be dead. Boyd's wife fears Boyd and what he would do to her if he were not sent to prison. Boyd was already serving community control sanctions for a conviction of domestic violence against her when he committed these offenses on January 1, and his extensive criminal history includes offenses of rape, sexual battery, and aggravated menacing. Regardless of Boyd's depression, his professed love for his wife, and how reasonable, presentable, and cooperative he was, he committed violent acts against

his wife while trying to kill her, causing her to suffer serious physical and emotional harm.

{¶ 23} Accordingly, we do not clearly and convincingly find that Boyd's individual sentences for felonious assault with a knife and attempted aggravated arson are contrary to law.

### B. Consecutive Sentences

{¶ 24} Boyd also argues that the trial court's imposition of consecutive sentences for both counts of felonious assault and attempted aggravated arson was contrary to law because the record does not support the trial court's findings pursuant to R.C. 2929.14(C)(4). He maintains that the trial court did not adequately explain why it was imposing consecutive sentences. He contends that mitigating factors, including his age, that he had never been to prison before, that his conduct was triggered by his wife's infidelity, and that he had an unmedicated depressive disorder, should have precluded the imposition of consecutive sentences. He also argues that his aggregate sentence of 17 years is contrary to law because R.C. 2929.11 and 2929.12 do not support it.

{¶ 25} As the Ohio Supreme Court has explained, when reviewing consecutive sentences, "R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under'" R.C. 2929.14(C)(4). *Bonnell*,

140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 28, quoting R.C. 2953.08(G)(2)(a).

{¶ 26} A defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record does not support the court's findings made pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Nia* at ¶ 16. Boyd raises the second argument on appeal.

{¶ 27} "In Ohio, sentences are presumed to run concurrent to one another unless the trial court makes the required findings under R.C. 2929.14(C)(4)." *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28. Trial courts must therefore engage in the three-tier analysis of R.C. 2929.14(C)(4) before imposing consecutive sentences. *Id.* First, the trial court must find that "consecutive sentences are necessary to protect the public from future crime or to punish the offender." Second, the trial court must find that "[consecutive] sentences [are] not disproportionate to the seriousness of the [offender's] conduct and to the danger the offender poses to the public." *Id.* Third, the trial court must find that at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶ 28} The failure to make the above findings renders the imposition of consecutive sentences contrary to law. *Gohagan* at ¶ 29. R.C. 2929.14(C)(4) directs that for each step of this analysis, the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). Trial courts, however, do not need to recite the statutory language word for word. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 29} Boyd relies on *State v. Metz*, 2019-Ohio-4054, 146 N.E.3d 1190, ¶ 97 (8th Dist.), for the proposition that the trial court must explain its reasons for imposing consecutive sentences. To the contrary, in *Metz* we explained that a reviewing court must determine whether the record clearly and convincingly supports the consecutive sentences. *Id.* at ¶ 97, 110. A trial court "has no obligation to state reasons to support its findings," but the necessary findings "must be found in the record and [] incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶ 30} Here, the trial court ordered Boyd's sentences for felonious assault with a knife, felonious assault with a vehicle, and attempted aggravated arson to run consecutively to one another. At the sentencing hearing, the trial court explicitly found that (1) consecutive sentences are necessary to protect the public from future crime and to adequately punish Boyd, (2) consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public, and (3) Boyd committed his crimes while on probation for domestic violence through the Garfield Heights Municipal Court. The trial court then explained its findings "in laymen's terms":

> You snapped, you stabbed your wife, and you deserve I think by law to be punished for that. And I've imposed a sentence for that. But then to call the rest of what you did vicious is to gloss over the degradation that you exhibited to the rest of the event. And again, I agree with [defense counsel], it's undebatable, this is one event, generally speaking, but there were several points where you could have stopped, where you could have regained control, and acted with human kindness towards a woman that you supposedly love. But you didn't. Instead, you tried to run over her with a car. And after that you tried, most violently, to set her on fire. So I don't think that a single sentence, even if you were given, for example, the maximum of eight years on one of the felony two's and everything else was run concurrent, I don't think a single sentence would adequately reflect the conduct at issue here.

Accordingly, the trial court made the requisite R.C. 2929.14(C)(4) findings and did not need to do anything more to explain its findings (although it did).

{¶ 31} We also find that the record clearly and convincingly supports the trial court's findings pursuant to R.C. 2929.14(C)(4). In support of his argument to the contrary, Boyd points to *Moore*, 2014-Ohio-5135, 24 N.E.3d 1197, at ¶ 33, 40, in which this court found that the record did not support the trial court's imposition of

consecutive sentences. *Moore* is distinguishable because we relied heavily on the disparity between the defendant's sentence and that of his codefendant — facts that do not exist here. The record reflects that Boyd caused his wife serious physical harm and that she fears what he may do to her in the future. Even after Boyd's wife survived his attempts to kill her with a knife and set her on fire, Boyd still attempted to kill her by running over her with a car. Boyd's mitigation of penalty report shows that he has an extensive criminal history, including rape, sexual battery, burglary, domestic violence, aggravated menacing, drug trafficking, drug possession, and theft. Boyd was also on probation for domestic violence against his wife at the time he committed the offenses in this case. The record clearly and convincingly supports the trial court's finding that consecutive service is necessary to protect the public from future crime and to punish Boyd, and consecutive sentences are proportionate to the seriousness of his conduct and to the danger he poses to the public. Boyd's mitigation arguments do not show that the record does not support the trial court's findings to impose consecutive sentences.

{¶ 32} For the same reasons that we find the record clearly and convincingly supports Boyd's individual and consecutive sentences, we find that the record supports Boyd's aggregate sentence of seventeen years. Boyd caused his wife serious physical harm and tried to kill her in multiple, distinct ways. The trial court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, and the record supports the

imposition of consecutive sentences. We do not clearly and convincingly find that Boyd's sentence is unlawful.

{¶ 33} Accordingly, we overrule Boyd's first assignment of error.

### III. Allied Offenses

{¶ 34} In his second and final assignment of error, Boyd argues that the trial court violated Boyd's due process rights and protections against double jeopardy by imposing separate sentences for both counts of felonious assault and abduction, which he claims are allied offenses of similar import. He maintains that these counts arose from a single animus in a continuous course of events against a single victim.

{¶ 35} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7. But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 36} In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976).

{¶ 37} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 38} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. In *Ruff*, the Ohio Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses

were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 39} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus.

{¶ 40} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 41} Boyd was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(2). This provision states that no person shall knowingly "[c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." The deadly weapon for the first count was a knife, while the deadly weapon for the second count was a motor vehicle.

{¶ 42} Boyd was also charged with abduction under R.C. 2905.02(A)(2), which provides that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]"

{¶ 43} Under *Ruff*, we must consider these offenses in the context of Boyd's conduct to determine (1) if the offenses were dissimilar in import or significance; (2) if the offenses were committed separately, or (3) if the offenses were committed with a separate animus or motivation. If any of these three factors apply to Boyd's

conduct, the offenses are not subject to merger pursuant to R.C. 2941.25. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 25.

{¶ 44} Offenses that occur "close in time and proximity" can still "involve separate conduct for purposes of an allied offense analysis." *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 27 (8th Dist.), *discretionary appeal not allowed*, *State v. Black*, 145 Ohio St.3d 1461, 2016-Ohio-2807, 49 N.E.3d 322. In *Black*, the defendant committed the first offense when he punched the victim in her bedroom, and after a break in the violence when the victim tried to escape through an upstairs window, the defendant committed the second offense by pushing the victim off of the roof. *Id.* at ¶ 28. Even though the defendant committed the acts close in time and proximity to one another and against the same victim, this court affirmed the trial court's holding that the offenses were not allied. *Id.* at ¶ 29; *see also State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, ¶ 66 (defendant's offense of placing a loaded firearm in his vehicle was separate from the offense of firing the firearm while driving his vehicle, and the offenses did not merge).

{¶ 45} Here, even though Boyd's acts of felonious assault and abduction arose close in time and proximity to one another and were against the same victim, and even if those counts arose from a single animus to try to kill his wife, the offenses were each committed separately. After each attempt failed to kill his wife, Boyd tried to kill her in a different manner. Felonious assault with a knife was for Boyd's knowing attempt to physically his harm his wife by repeatedly stabbing her with a knife while they were in their kitchen. Boyd's wife faked unconsciousness and

managed to escape to the neighbor's house. Boyd then knowingly used force to restrain his wife by pulling her by her neck back to their house, and this distinct conduct underlies the abduction count. After Boyd tried to set his wife on fire and the neighbors intervened, his wife thought she was safe and rested by a tree. But Boyd reinitiated the violence by attempting to physically harm his wife by running her over with a car in the front yard, leading to the separate count of felonious assault with a vehicle. Boyd made three distinct decisions: first, to stab his wife with a knife; second, to drag her by her neck away from the neighbors' house; and third, to try to hit her with a car in the front yard. Boyd's separate acts support the conclusion that the two felonious assault and abduction offenses are not allied offenses of similar import.

{¶ 46} Accordingly, we overrule Boyd's second and final assignment of error.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MARY EILEEN KILBANE, J., CONCUR