[Cite as *State v. Jeffrey*, 2023-Ohio-817.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111763 |
| v. | : | |
| DANIEL JEFFREY, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, SENTENCE VACATED IN PART, REMANDED FOR RESENTENCING
**RELEASED AND JOURNALIZED:** March 16, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-663077-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jonathan Block, Assistant Prosecuting Attorney, *for appellee*.

Ruth R. Fischbein-Cohen, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Daniel Jeffrey ("appellant") appeals his conviction for felonious assault and other crimes following a jury trial. For the reasons that follow, we affirm.

**Facts and Procedural History**

{¶ 2} In September 2021, a grand jury indicted appellant for rape, a first-degree felony (Count 1); felonious assault, a second-degree felony (Count 2); two counts of abduction, third-degree felonies (Counts 3 and 4), domestic violence, a first-degree misdemeanor (Count 5); and grand theft motor vehicle, a fourth-degree felony (Count 6). Appellant pleaded not guilty at his arraignment; several pretrials were conducted, and a jury trial commenced on May 10, 2022. The facts revealed at trial follow.

{¶ 3} S.C. and appellant were in an on-again, off-again relationship of approximately seven and one-half years. They also lived together off and on and had occupied the second floor of a duplex on West 49th Street in Cleveland. However, in February 2020, they were in an off-again phase of their relationship. S.C. moved out and was staying with a friend A.N., who lived on West 50th Street.

{¶ 4} On April 18, 2020, S.C. and A.N. went to a party. They left the party around 11:00 p.m., or midnight, and returned to A.N.'s home. S.C. contacted appellant, who picked her up from A.N.'s home and took her to the duplex on West 49th Street. S.C. told appellant that someone she had met on a dating app was at the party with his girlfriend but he was still sending her messages. S.C. and appellant later had intercourse. S.C. went to sleep on a mattress in the living room.

{¶ 5} S.C. awoke around 7:00 a.m. the following morning. When she went to get dressed and leave, she discovered that appellant had moved a couch and a loveseat to block the exit. Appellant also had taken S.C.'s phone and purse.

Appellant began to scream at her about pictures in her phone that she sent to other men and began "smacking" her as well. S.C. attempted to reach the door, but appellant grabbed her by her bra, ripped it off, and continued to smack her.

{¶ 6} At one point, appellant backed her up against the porch door. S.C. crouched down with her arms over her bare chest. Appellant began taking pictures of S.C. with her phone. E.F., S.C.'s brother, received a text message from his sister's phone later that morning. The text message included the topless pictures of S.C. crouched against the door.

{¶ 7} S.C. was able to get away at one point and ran out onto the front porch. Appellant followed her outside, and S.C. threw patio furniture at him to stop him from approaching her. Appellant grabbed her by the hair and dragged her back over to the door, all while striking her. S.C. slid to the ground, and she felt appellant's fingers enter her mouth, so she bit down as hard as she could. The next thing she felt was appellant's fingers inside her vagina, as he lifted her up to an upright position. Appellant shoved her against the side of the porch. Although S.C. tried to grab anything to hold on, appellant pushed her from the second-story balcony to the ground, approximately 20 feet. S.C. broke her right arm as a result of the fall.

{¶ 8} S.C. got up and ran to A.N.'s house, where she was able to call 911. During the 911 call, S.C. indicated that she lived with appellant at the West 49th street address. On cross-examination, the defense challenged S.C.'s statement that she lived with appellant in the 911 call and that appellant inserted his fingers into

S.C.'s vagina. S.C. acknowledged that she misspoke on the 911 call about where she lived, but also noted that she was shaken up about what had occurred and in great pain. S.C. also acknowledged that she did not immediately report that appellant had inserted his fingers into her vagina. She was embarrassed at the time and was still embarrassed testifying about it in court. Although S.C. did not report vaginal penetration until later, two separate videos from body-cam footage taken right after the incident show S.C. motioning to her crotch when describing how appellant grabbed her.

{¶ 9} When the police went to the scene to contact appellant, a neighbor called to the police. She conversed in Spanish with one of the officers, Officer Tania Torres ("Officer Torres), who also spoke Spanish. Officer Torres testified that the neighbor told her she saw S.C. leave, and S.C. was "half-naked." The conversation between Officer Torres and the neighbor was captured on body-cam. Appellant's attorney did not object to the testimony but challenged Officer Torres' translation of what the neighbor said.

{¶ 10} Testimony was also taken regarding S.C.'s Jeep. The prior owner testified that she had given the car to appellant but had left the buyer information blank. S.C. claimed that the Jeep was in her name and that appellant did not have permission to drive it on April 19, 2020.

{¶ 11} Appellant remained in possession of S.C.'s phone after the incident. S.C. tried to have the phone turned off but was unsuccessful. She believed this was because appellant had the phone and was able to request service. Shortly after the

incident and in the days that followed, several suspicious messages were posted to S.C.'s Facebook account. S.C. maintained those messages were posted by appellant impersonating S.C. in order to exonerate himself.

{¶ 12} The jury found appellant guilty of Count 2 felonious assault; guilty of Counts 3 and 4, abduction; and guilty of Count 5, domestic violence. The jury found appellant not guilty of Count 1, rape; and not guilty of Count 6, grand theft motor vehicle.

{¶ 13} At a later date, the trial court sentenced appellant to six years to nine years on Count 2; 36 months each on Counts 3 and 4; and credit for time served on Count 5. The trial court noted that Counts 3 and 4 would merge and ordered them to be served concurrent to Count 2.

{¶ 14} Appellant appeals and presents the following errors for our review:

### Assignment of Error No. 1

The conviction was against the manifest weight of the evidence.

### Assignment of Error No. 2

Although a sentence is to run concurrent, it still implicates appellant's double jeopardy clause.

### Assignment of Error No. 3

The counts for felonious assault; domestic violence; and abduction constitute double jeopardy.

**Law and Analysis**

{¶ 15} For ease of analysis, we will address the assignments of error out of order, where practical. In this case, we will start with the first assignment of error, in which appellant alleges that his convictions were against the manifest weight of the evidence.

**Weight of the Evidence**

{¶ 16} When we analyze the weight of the evidence, we "must consider all of the evidence in the record, the reasonable inferences [that can be made] from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered.'"" *State v. Stratford*, 8th Dist. Cuyahoga No. 110767, 2022-Ohio-1497, ¶ 21, citing *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} The weight of the evidence

concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) *Black's [Law Dictionary]*, *supra*, at 1594.

*Thompkins* at 387, quoting *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶ 18} For weight of the evidence, "the issue is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" (Emphasis sic.) *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285 ¶ 52, quoting *State v. Getsy*, 84 Ohio St.3d 180, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978) syllabus.

{¶ 19} However, "'[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193, citing *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 20} In the instant case, appellant argues that S.C. lied during her testimony, and in fact describes her as a "pathological liar" who should not be believed. Further, he suggests that evidence of one lie is sufficient to establish that S.C.'s testimony should not be believed in its entirety. However, a jury is permitted to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Doyle*, 8th Dist. Cuyahoga No. 84575, 2005-Ohio-2006, ¶ 9, citing *State v. Antill*, 176 Ohio St. 61, 197 N.E.2d 548 (1964).

{¶ 21} Appellant focuses on four aspects of S.C.'s testimony that he argues demonstrate that she was lying. First, he points to the fact that on the 911 call, S.C.

claimed to live at appellant's address. At trial, S.C. acknowledged that she had actually moved out of the apartment in February and was living with A.N. She attributed her misstatement on the 911 call to being "shook-up" because of what occurred.

{¶ 22} Even so, there was evidence that S.C.'s statement was a convenient shorthand rather than a lie or attempt to deceive. Both A.N., S.C.'s friend, and Holley Ray Moore ("Moore"), appellant's boss and friend, testified to the on-again, off-again nature of S.C. and appellant's relationship. Moore testified that S.C. would come and go from the apartment. A.N. similarly testified that they would break up and get back together. Additionally, although they were off again on April 19, 2020, A.N. testified that most of S.C.'s belongings were still at appellant's home. When S.C. moved in with A.N. in February, she only had her clothes and some hygiene products. Given the foregoing and the heightened circumstances of the time, we find the jury could reasonably conclude that S.C. was not intentionally deceptive on the 911 call.

{¶ 23} Second, appellant claims S.C. lied when she alleged that he threatened to shave her head. The evidence of this lie, according to appellant, is the fact that he did not, in fact, shave her head. Initially, we note that the fact that someone did not act on a threat, does not mean they did not make a threat. Additionally, there was evidence that the appellant likely did make the threat. The text message S.C.'s brother received from her phone stated, "I should of shaved her head so everyone knows how she is." The phone was in appellant's possession at

that time. The jury could reasonably conclude that the threat was made by appellant during the altercation.

{¶ 24} Thirdly, appellant alleges that S.C. lied about the rape allegations. Notably, victims do not make charging decisions. In the instant case, the record is clear that the rape charge was not added to the indictment until September 2021. Detective John Freehoffer ("Det. Freehoffer") testified that he was assigned the case a day or two after it occurred in 2020. However, he did not speak to the victim until September 2021, after the first indictment had already been filed. At that point, he learned from S.C. that appellant had allegedly penetrated her vaginally during the altercation. Det. Freehoffer then presented the information to the prosecutor's office and a charge of rape was added to the indictment.

{¶ 25} Nevertheless, a review of the early body-cam video in the case, calls into question the suggestion that S.C. lied. During the first video encounter, S.C. described how appellant picked her up by motioning with an open hand in front of her crotch with her fingers curled towards her body. Similarly, body-cam footage taken while S.C. was in the emergency room showed her making a similar motion. Finally, on the witness stand, S.C. explained that she did not immediately tell law enforcement what happened because she was embarrassed and that it was hard to say it out loud.

{¶ 26} Finally, appellant alleges that S.C. lied about being pushed off the porch because she testified there was a tree blocking the edge. The body-cam video used at trial, however, establishes that the tree could not prevent appellant from

pushing S.C. off the porch. The tree was several feet from the porch, but from the angle in the video, the tree momentarily blocked the *view* of the porch.

{¶ 27} Consequently, after independently reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of witnesses, we find that the jury did not, in resolving conflicts in the evidence, lose its way and create a manifest miscarriage of justice necessitating a reversal of the conviction and a new trial.

{¶ 28} Accordingly, appellant's first assignment of error is overruled.

**Double Jeopardy and Allied Offenses of Similar Import**

{¶ 29} Next, we will address appellant's third assignment of error. Appellant argues that double jeopardy was violated because felonious assault, abduction, and domestic violence are allied offenses of similar import. Therefore, he should not have been sentenced to all three. Further appellant alleges that the fact that the sentences are concurrent makes no difference because he is still doubly punished.

{¶ 30} The double jeopardy clause of the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution both "protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State v. Boyd,* 8th Dist. Cuyahoga No. 109052, 2020-Ohio-5181, ¶ 35, citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.

**{¶ 31}** However, both the Ohio Supreme Court and the Supreme Court of the United States have found that the clause "'does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Id.*, quoting *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Courts have also expressed this idea by saying that the double jeopardy clause "allow[s] multiple convictions from the same conduct, as long as that conduct does not constitute the 'same offense.'" *State v. White*, 8th Dist. Cuyahoga No. 92972, 2010-Ohio-2342, ¶ 19, quoting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**{¶ 32}** R.C. 2941.25, which codifies the double jeopardy protections (*see State v. Reyes*, 8th Dist. Cuyahoga No. 108947, 2019-Ohio-4795, ¶ 6, citing *State v. Underwood*, 124 Ohio St. 3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23), instructs the courts to determine whether a defendant's conduct, which violates multiple statutes, are separate offenses or can be merged. It provides:

> (A)   Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B)    Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(A) and (B)

{¶ 33} The defendant's conduct is the pivotal consideration when determining whether offenses are allied offenses of similar import. *Boyd*, 8th Dist. Cuyahoga No. 109052, 2020-Ohio-5181, at ¶ 38, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. When the defendant's conduct supports multiple offenses, he may be convicted of all of them if "any one of the following is true: (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation." *Id.*, citing *Ruff* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 34} Our review of whether offenses are allied offenses of similar import requires a de novo standard of review. *Id.* at ¶ 40, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *see also State v. Bailey,* Slip Opinion No. 2022-Ohio-4407, ¶ 11 ("Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions."). De novo review requires this court to "review the trial court's judgment independently and without deference to the trial court's determinations while applying the same standard as that employed by the trial court." *Bellaire Corp. v. Am. Empire Surplus Lines Ins. Co.*, 2018-Ohio-2517, 115 N.E.3d 805, ¶ 13 (8th Dist.).

{¶ 35} Appellant was convicted of felonious assault under R.C. 2903.11(A)(1), which provides that no one shall knowingly cause serious physical harm to another.

{¶ 36} Appellant was also convicted of two counts of abduction under R.C. 2905.02(A)(1) and 2905.02(A)(2). R.C. 2905.02(A)(1) provides that no one, without privilege to do so, shall knowingly, by force or threat, remove a person from the place where they are found. R.C. 2905.02(A)(2) provides that no one, without privilege to do so, shall knowingly, by force or threat, restrain the liberty of another under circumstances that create a risk of physical harm to the person or place them in fear.

{¶ 37} Finally, appellant was convicted of domestic violence under R.C. 2919.25(A), which provides that no one shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶ 38} Looking at the elements of all three crimes, as well as appellant's conduct, we find that the offenses were committed separately. Offenses are committed separately when "'one offense was complete before the other offense occurred, * * * notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2d Dist. Montgomery No. 29110, 2022-Ohio-3081, ¶ 38, quoting *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24.

{¶ 39} In the instant case, appellant abducted S.C. when he blocked the exit to his apartment and refused to allow her to leave. Once she was trapped, appellant stripped her bra off and assaulted her repeatedly. The abduction statute does not require a showing of physical harm, therefore, the act of trapping S.C. completed the abduction. The domestic violence offense then began when appellant began

smacking S.C. repeatedly and ripping her bra off. S.C. subsequently managed to escape onto the porch, at which time, appellant grabbed her and pushed her over the edge to the ground below, beginning and completing the felonious assault. Although the offenses involved the same victim and occurred within a relatively short period of time, there is a beginning and end to each crime. They are, therefore, not allied offenses of similar import. *See Boyd*, 8th Dist. Cuyahoga No. 109052, 2020-Ohio-5181, at ¶ 45; *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561, ¶ 27 (8th Dist.), *discretionary appeal not allowed*, 145 Ohio St.3d 1461, 2016-Ohio-2807, 49 N.E.3d 322.

{¶ 40} Accordingly, appellant's third assignment of error is overruled.

**Requirements for Offenses deemed Allied Offenses of Similar Import**

{¶ 41} Finally, in his second assignment of error, appellant argues that his right against double jeopardy was violated when the trial court gave him multiple sentences for the "same" crime. In this assignment of error, he focuses primarily on the merged abduction convictions.

{¶ 42} The trial court determined that the two counts of abduction were allied offenses of similar import and therefore merged. We agree. However, the trial court then proceeded to sentence appellant to 36 months on each count, to run concurrently. The law is clear that "the trial court has no authority to impose separate sentences on offenses that are deemed to be allied under R.C. 2941.25." *State v. Vintson*, 8th Dist. Cuyahoga No. 108477, 2019-Ohio-3894, ¶ 5, citing *State v. Shearer*, 8th Dist. Cuyahoga No. 107335, 2019-Ohio-1352, ¶ 4. Furthermore, "'the

court has a mandatory duty to merge the allied offenses by imposing a single sentence, and the imposition of separate sentences for those offenses — even if imposed concurrently — is contrary to law because of the mandate of R.C. 2941.25(A).'" *Id.*, quoting *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 28.

{¶ 43} When a court finds that a defendant has been found guilty of two or more allied offenses of similar import, the court "should permit the state to select the allied offense to proceed on for purposes of imposing sentence and it should impose sentence for only that offense." *Williams* at ¶ 2.

{¶ 44} Accordingly, we sustain appellant's second assignment of error as to the two counts of abduction. Accordingly, appellant's sentence on Counts 3 and 4 are vacated, and the case is remanded for resentencing. On remand, the state has the right to elect which offense to pursue at sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 21.

{¶ 45} Judgment affirmed in part, sentence vacated in part, remanded for resentencing on Counts 3 and 4.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, A.J., and
LISA B. FORBES, J., CONCUR